FORD MOTOR CO. et al. v. INDUSTRIAL COMMISSION
OF UTAH et al.

No. 4181.   Decided December 3, 1924.   (231 Pac. 432.)

1.  MASTER AND SERVANT—MASTER LIABLE UNDER COMPENSATION
    ACT, WHERE BUSINESS IN WHICH SERVANT ENGAGED CAN FAIRLY
    BE CALLED MASTER'S.  Where master's business is being so di-
    rectly facilitated by act of servant, in which he is engaged at
    time of injury, that such act can fairly be called business of
    master, he is liable under the Workmen's Compensation Act.[1]

2.  MASTER AND SERVANT—SALESMAN HELD ENGAGED IN MASTER'S
    BUSINESS WHILE ON TRIP ATTEMPTING TO SELL CAR, THOUGH
    PLEASURE WAS INCIDENTAL PURPOSE OF TRIP.  Salesman em-
    ployed to sell automobiles, who, in order to accommodate cus-
    tomer and to effect a sale, permitted him to drive on a trip,
    paramount purpose of which was to sell the automobile, and
    element of private pleasure being merely incidental, and who
    received injuries when car was wrecked, *held* engaged in his
    master's business, within Workmen's Compensation Act.

Proceeding by the Ford Motor Company and another to
review an award of compensation by the Industrial Com-
mission of Utah, under the Workmen's Compensation Act,
to the dependents of Victor H. Eckman.

AWARD AFFIRMED.

*Bagley, Judd & Ray*, of Salt Lake City, for plaintiffs.

*Harvey H. Cluff*, Atty. Gen., and *J. Robert Robinson*, Asst.
Atty. Gen., for defendants.

CHERRY, J.

---

[1] *Wright* v. *Intermountain M. C. Co.*, 53 Utah, 176, 177 P. 237.

See (1) Workmen's Compensation Acts, p. 80 (1926 Anno.) (2)
Workmen's Compensation Acts, p. 83.

This proceeding involves the review of an award made by the Industrial Commission under the Workmen's Compensation Act (Comp. Laws 1917, §§ 3061-3165) to the dependents of Victor H. Eckman, who sustained injuries in an automobile accident near Logan, Utah, on December 20, 1923, from which he died the following day. At the time of the accident Eckman was employed by the Ford Motor Company, one of the plaintiffs.

The Industrial Commission found, among other essential facts, that the accident arose out of and in the course of the employment of the deceased. The sole question argued and presented for decision is whether or not this finding is supported by substantial legal evidence.

Eckman was employed in the capacity of "Lincoln road man." His duties were to promote sales activities of Lincoln cars among the retail dealers operating under the Salt Lake branch of the Ford Motor Company. He was furnished a Lincoln car, called a demonstrator or road man's car, for use in his employment. The Service Motor Car Company, of which Mr. LeGrand Jones was the manager, was the local Ford dealer or agent at Logan, Utah. The agency included the dealing in Lincoln cars, but no sample or demonstrating car had been purchased.

On the morning of December 20, 1923, Eckman was instructed to go from Salt Lake City to Logan for the purpose of promoting the sale of a Lincoln car to the Service Motor Company. His instructions as testified to by his manager, Mr. Fred T. Mackay, were as follows:

"As I recall it my instructions to Mr. Eckman before he left for Logan were that he should impress upon Mr. Jones the necessity for his having a Lincoln car belonging to his agency for the purpose of demonstrating to prospective purchasers. I believe I was rather emphatic to Mr. Eckman about it because we felt that Logan had Lincoln possibilities and because up to that time there had been nothing done by the Service Motor Company, of which Mr. Jones is the manager."

Eckman thereupon drove to Logan in the Lincoln car provided for his use. He presented himself at the garage of the Service Motor Company before noon, and spent an

hour with Jónes in an effort to induce him to take a Lincoln
car. He stated that he was there to demonstrate or sell a
Lincoln car to the local dealer, and to demonstrate the car
to any prospective buyers the dealer might have. He and
Jones "called to see one or two prospects." At noon a
meeting of Ford agents was held at a hotel, which was
attended by both Eckman and Jones. After the meeting,
Eckman together with Mr. Franz, the assistant manager of
the Ford Motor Company, called on Jones and continued
to urge the sale upon him, until nightfall, when Franz de-
parted for his home at Salt Lake City. Jones wanted the
car but was undecided; there was a question in his mind;
and he said he wanted to see what the other members of
his company thought about it. After Franz had left, Eck-
man returned to the garage where he engaged Jones for
another hour ·in an effort to induce him to make the pur-
chase, but no conclusion was reached. The matter of a sale
was still pending and undecided. At about 8 o'clock p. m.
two other Ford agents, Messrs. Riley and Sloey, came in
the garage where Eckman and Jones were engaged. It was
the intention of Eckman, Riley and Sloey to leave Logan
that evening and go to Brigham City. The time for their
departure was fixed at not later than 10 o'clock. During
the conversation between the four men à ride was proposed
·(obviously by Jones), and some one suggested a dance, but
Jones said there was none in town. Jones thought they
might go to Wellsville or Hyrum. The men got in Eck-
man's car, which was standing in front of the garage, and
·drove to a hospital where Jones invited two young ladies,
who were nurses, to go for a ride. He said to them that he
had a new car, a demonstrator, he desired to show them.
Jones testified respecting these two ladies:

"While it wasn't my purpose to sell them a Lincoln, they were
both going to buy a car, and I said, 'I would like to show· you this
one.' "

The young ladies got in the car, and at Jones' suggestion
and invitation two more of his lady friends, residing at
another place, joined the party. The ladies were Jones'

friends and were all strangers to Eckman. At his own request Jones was driving the car. He said he wanted to learn all he could about the car; that he had never been in the car when it was loaded before; that a better demonstration of the car could be made when it was loaded to capacity.

They had no particular destination in view, although a dance had been mentioned. Sloey had said that he didn't want the ride to last more than an hour, and one of the young ladies was told when invited to go, "We will just be a little while." One witness testified that after starting upon the ride some one asked: "Where are we going?" and Jones said: "We would go to Hyrum and see if there was a dance there." But other evidence indicated that the arrangements were merely for a ride in the car which was being exhibited.

The car, with Jones, Eckman, and two ladies occupying the front seat, and the other four the rear seat, was driven by Jones on the main highway to a point two and a half miles south of Logan, where the car slipped off the road into a barrow pit and was wrecked, in which accident Eckman sustained the injuries which caused his death.

The plaintiffs' counsel strenuously contend that at the time of the accident Eckman was not engaged in his master's business or in his employment, but was on his way to a dancing party for his own personal pleasure. There are some circumstances shown in the record which lend color to this view. But on the other hand there is a substantial basis for the conclusion that the paramount purpose of the trip, so far as Eckman was concerned, was to demonstrate and effect a sale of the car to Jones, and that whatever element of private pleasure intervened was merely incidental to his principal and ultimate object.

There was no definite intention or plan respecting the pleasure trip. There was no arrangement or appointment for attending a dance. It does not appear that a dance was held that they could have attended. Besides, the intention of Eckman to leave Logan not later than 10 o'clock

that night for Brigham City tends to dispute the idea of his attending any dancing party. The ladies were strangers to Eckman. They were Jones' friends and went on the ride at Jones' invitation. They were not invited to any special or pleasure party, but were invited to ride in a new car, a demonstrator, which Jones wanted to show them.

The facts were clear that Eckman had gone to Logan under emphatic instructions for the express purpose of selling a car to Jones; that he had labored all day without closing a contract; and when night came he continued his efforts to make the sale, and was so engaged when a ride in the demonstrating car was suggested. To comply with the suggestion was not only the reasonable and natural response of Eckman, but, under the circumstances, it was his imperative duty. He was there with his car for that very purpose. The fact that Jones desired the company of his female friends did not necessarily change the nature or purpose of the ride, at least so far as Eckman was concerned. Eckman did what any good salesman would be expected to do, under such circumstances, and it is a reasonable and legitimate inference to say that what he did was primarily to facilitate the sale of the car to Jones. He did nothing inconsistent with the faithful discharge of his duty to his employer.

Numerous cases are cited in the briefs, but no useful purpose would be served by referring to them here. They merely illustrate the application of the recognized rule that the mere fact that the master's business is to be remotely promoted by an act of his agent is not enough to make the master liable. But where his business is being so directly facilitated that the business can fairly be called the master's, the rule is otherwise. See *Wright* v. *Intermountain M. C. Co.,* 53 Utah, 176, 177 P. 237.

We think the facts and circumstances were such as to warrant the inference that at the time of the accident the employé was engaged in his master's business, and that the Industrial Commission arrived at a legitimate conclusion.

Award affirmed, with costs.

WEBER, C. J., GIDEON and FRICK, JJ., and McCREA, District Judge, concur.

THURMAN, J., did not participate herein.