THOMPSON v. INDUSTRIAL COMMISSION
OF UTAH et al.

No. 5475.   Decided December 4, 1933.   (27 P. [2d] 436.)

*Horace C. Beck,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Grover A. Giles,* Deputy Atty. Gen., for defendants.

FOLLAND, J.

Plaintiff, a deputy fish and game warden in the employ of the state, on March 6, 1933, sustained an injury by accident while attempting to start his automobile, resulting in total loss of sight in his left eye. He made application to the Industrial Commission of Utah for compensation alleging that the accident occurred in the course of his employment. Compensation was denied, and the cause was brought to this court for review. The only question presented is whether the accident occurred in the course of employment.

The facts, which are not in dispute, are, with certain exceptions hereinafter noted, fairly reflected in the findings of the commission which are as follows:

"I. On March 6th, 1933, D. J. Thompson, of Altonah, Utah, was employed by the State of Utah Fish and Game Department as a Game Warden in and for Duchesne County; on said date he was receiving a salary of $30 per month and his duties as deputy game warden for said county included carrying feed to different places to feed the birds; in performing said duties he had no instructions from the Fish and Game Department as to his means of travel; it was left entirely to him whether he went on foot, took a horse or an automobile, or any other means of locomotion which suited his purpose. He furnished his own horse at times and his own automobile, without remuneration from the department for their hire.

"II. On said date he had decided to make a trip of something like 60 miles with his car, in going and returning to his home. About 10:30 o'clock a. m., at his home he was preparing to make the trip. He had some empty sacks in his car which belonged to parties from whom he had purchased grain for the Fish and Game Department, and for which a charge of 10c per bag had tentatively been made against said department with the understanding that when the sacks were returned credit in the sum of 10c for each bag so returned in good condition would be allowed. It was the intention of the applicant to take these sacks back to the owners, secure the credit slips, to get bills for certain feed furnished and to travel out into the country and do some feeding. The applicant proposed to use his own car in which the sacks hereinabove referred to were placed. He found some difficulty in starting the car and after trying hot water resorted to heating the manifold with a torch; after about three minutes the oil exploded, causing the oil cap to fly up and strike applicant in his left eye. The blow resulted in a deep gash about an

inch long above the eye-brow and a deep cut through the eye in the cornea. The applicant was immediately incapacitated for employment and came to Salt Lake City and engaged the services of Dr. W. D. Donoher. He was hospitalized at the Holy Cross Hospital.

"III. The Commission further finds that the applicant was using his own means of transportation on the proposed trip; that he intended to use his own car; that he was on his own premises; that he was not under the jurisdiction or control of any person or persons in authority in the Fish and Game Department regarding the details of his employment; that he was not, at the time of the explosion resulting in injury, performing any service for the state, but was conditioning his own automobile."

Thompson had been a deputy fish and game warden for more than twenty-five years. Prior to July 1, 1932, his salary had been $125 per month. It was then reduced to $105 until December 1, 1932. In addition thereto, he had been allowed mileage at 7 cents a mile for the use of his automobile when necessarily used. Because of financial distress of the fish and game department, his salary was after December 1, 1932, further temporarily reduced to $30 per month, although he was retained as a full-time warden and was subject to call at all hours of the day and night. He was under specific directions of his employer to continue the feeding of game birds at such times and places as necessity required. It is fairly inferable from the testimony of Mr. Newell B. Cook, the state fish and game commissioner and head of the department, that mileage would have been allowed, as had been the practice theretofore, for the use of the employee's automobile on the trip he was about to make when injured.

It is also clear from the testimony of Mr. Cook that the trip plaintiff was about to make in his automobile was in the course of his employment. Indeed, this is not disputed, as will be seen from the following quotation from defendant's brief:

"We can readily see how any injury which plaintiff might have sustained while enroute to the place where he was to return the empty sacks and secure a supply of wh∩t might well be within the

rule. He would then have been upon a substantial mission for his employer growing out of his employment from the time he left his premises. We think his employment began at that point."

The narrow question for decision is indicated in the last proposition in finding No. 3 of the Industrial Commission, wherein it is said "that he was not, at the time of the explosion resulting in injury, performing any service for the state, but was conditioning his own automobile." It may be assumed that any work plaintiff may have done on his automobile in the nature of repairing or conditioning generally would not have been in pursuance of the master's business, since the car belonged to the plaintiff and was used for his own purposes as well as occasionally in connection with the master's business. Here, however, we have a different question. The car was in good repair, but on account of cold it did not readily start. Plaintiff, at the time of his injury, was attempting to start the automobile for the puropse of making a trip exclusively in connection with his duties as deputy fish and game warden. That the automobile belonged to plaintiff, and not to the state, we think immaterial under the circumstances. The plaintiff was required, in pursuance of his duties, to travel from place to place within the county. The means or instrumentality of transportation to be employed by him in the delivery of sacks, the obtaining of grain, the feeding of game birds, and in traveling from place to place within the county where his work would be done, was left by his employer to his discretion. The trip about to be made would have covered a distance of approximately sixty miles. It was not the requirement of his employer that he should walk such distances. He had decided to use his automobile for the purpose of the trip and had already placed therein the sacks he was about to deliver and had in his pocket blank vouchers in order to transact other business in the interest of the state. If he would have been in the master's service from the moment he left his own premises in his automobile, as has been conceded in defendant's brief and argument,

the only question for us to decide is whether such service can relate back to the time and place of the starting of his automobile to make the trip. His home was his headquarters or office. His duties required him to travel from his home to different points in the county, depending upon the specific errand he had to perform at any given time. He could travel by foot or on horseback or by automobile, and when he chose to travel by automobile the state allowed mileage. The trip he was about to make would have been exclusively and wholly in the interest of the state and within the line of his duty. Not anything is shown in the evidence to indicate he had any business of his own to transact or that his trip would have been partly for the purpose of transacting business for the state and partly for his own convenience or on business for another. In the case of *Kahn Bros. Co.* v. *Industrial Comm.*, 75 Utah 145, 283 P. 1054, this court held that where an employee is injured on his way from his home to the post office and bank where the major factor of his journey was to perform duties for the master, the injury was compensable. The same rule is of course applicable where the journey is made exclusively in the interest of the master and in the course of employment.

The rule announced in *Sullivan* v. *Industrial Comm.*, 79 Utah 317, 10 P. (2d) 924, 926, is applicable here notwithstanding the facts in that case are quite different from those in the present record. The court there said:

"Though an employee is by the terms of his employment required to be ready to perform his duties for the employer at any hour of the day or night, it does not follow that every accident or injury that he may receive during the course of the twenty-four hours arises out of his employment. To be compensable, it must appear that at the time of the injury he was discharging some of the duties he is employed to perform or that what he is doing is in some way connected with or incidental to the duty owing to the master."

Notwithstanding the plaintiff was employed on full time, was subject to call at any time of the day or night, and could perform certain of his duties for the state at times of his

own choosing, he clearly would not have been in the course of his employment while working on some job of his own around the home or on the farm, or in generally repairing his automobile for his own use or in making a trip with it where the major purpose was in connection with his own business. Under the undisputed facts he had started on a mission for the state and was actually engaged in that mission, although he had not yet left the boundaries of his own premises. He had started to do the thing the state required of him; that is, to leave home for the purpose of returning grain sacks for credit, taking care of certain business arrangements, picking up grain, and going to the feeding grounds to feed game birds. He was as much in the line of his duty as he would have been had his automobile stalled on the road or at the feeding grounds and he had there suffered an injury by accident while attempting to start it. He had left his house with the intention of going on the trip and there had been no break in the continuity of events either by interval of time or the doing of any other act or service until he attempted to start his automobile for the purpose of making the journey. It may well be said that what he was doing in attempting to start the car was "in some way connected with or incidental to the duty owing to the master." *Sullivan* v. *Industrial Comm.*, supra. The master's business was being directly facilitated by the act of the employee. *Ford Motor Company* v. *Industrial Comm.*, 64 Utah 425, 231 P. 432. A somewhat comparable situation was presented in the case of *Beaver City* v. *Industrial Comm.*, 67 Utah 8, 245 P. 378, where an award was sustained in favor of a city marshal who was injured while cleaning his gun at home. The facts of that case indicated that it was necessary for him to clean his gun in order to have it available for use in connection with his duties as marshal. Where, as here, it is conceded or established that the use to be made of the automobile when once started was a journey in the master's business the decisions hold that the act of the immediate preparation of the automobile or

the starting of it for such use is in the course of employment. *Derleth* v. *Roach & Seeber Co.*, 227 Mich. 258, 198 N. W. 948, 36 A. L. R. 472; *Spero* v. *Heagany & Draper Co.*, 256 Mich. 403, 240 N. W. 21; *Martin* v. *Henry Card & Co.*, 193 App. Div. 6, 183 N. Y. S. 88. In *Derleth* v. *Roach & Seeber Co.*, supra, a traveling salesman died from carbon monoxide poisoning incurred while preparing his own automobile for use on the following day to see the trade where the employer allowed a specified sum per mile for the use of such automobile. The accident was held to have occurred in the course of employment.

The undisputed evidence required a finding that the employee was injured by accident arising out of and in the course of his employment by the State fish and game department.

The order of the commission denying compensation is reversed, and the cause remanded to the Industrial Commission of Utah for further proceedings.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.