Donald O. MARTINSON, Plaintiff,

v.

W–M INSURANCE AGENCY, INC., State Insurance Fund, and the Industrial Commission, Defendants.

No. 16345.

Supreme Court of Utah.

Jan. 29, 1980.

Kent Shearer of Mock, Shearer & Carling, Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen., M. David Eckersley of Black & Moore, Salt Lake City, for defendants.

CROCKETT, Chief Justice:

Plaintiff Donald O. Martinson seeks review of an order of defendant Industrial Commission denying him workmen's compensation for injuries suffered in an auto accident November 21, 1976, which he claims occurred in the course of his employment with defendant W–M Insurance Agency.

The controversy here is over whether Mr. Martinson was in the performance of his duties for the insurance agency when he became involved in an automobile collision on his return from what he claims was a combined business-pleasure trip to Park City on November 20, 1976.

The projected factual foundation upon which he bases his claim is: that he is vice president and a director of the insurance agency; that he spends a significant part of his time contacting customers, on which he receives commissions. One of the customers was the Kimball Art Center in Park City for whom he had provided a policy insuring the center's construction phase and the art exhibits. A director of the center, Mr. Robert Williams, was a personal friend and former employer of the plaintiff. He invited the plaintiff to attend the opening on November 20, 1976, and to consult with him regarding the adequacy of the insurance on the exhibits. Plaintiff drove to Park City, and attended the celebration of the opening of the center. He testified that he spent the evening of November 20 "socializing" with Mr. Williams and his wife and that he stayed that night in their condominium.

The next morning he got up late. He says that that afternoon, before he left, he discussed the insurance on the art center and arranged for an additional $55,000 worth of coverage on the art exhibits; and that he confirmed that additional coverage by a telephone call to Fireman's Fund Insurance Co. in Salt Lake City. It is noteworthy here that the amount of additional coverage was based on inventory records of the art center, which had previously been sent to the Salt Lake office, and that the business about it did not require any personal inspection of the exhibits by him.

That afternoon, in driving toward Salt Lake, he crashed into the rear end of a truck and suffered the injuries for which he seeks compensation. The plaintiff was given a blood alcohol test which showed an alcohol level of .18 percent;[1] and he concedes that it would be in order to reduce any award by the 15 percent provided for in Sec. 35–1–14, U.C.A.1953.[2]

It is the plaintiff's position that under the undisputed facts, the only reasonable conclusion to be drawn is that the collision and his injury occurred while he was in the performance of his duties and that the refusal of the Commission to so find was therefore capricious and arbitrary.

In preface to analyzing his contention and the decision of the Commission, it is deemed advisable to make some general observations about the determination as to compensation coverage.

■ To maintain actuarial soundness and integrity of workmen's compensation systems, it is essential that premiums be collected to cover the risks involved. The coverage does not, and as a practical matter, cannot extend to any injury done to an employee wherever and whenever it hap-

---

1. Sec. 41–6–44, U.C.A.1953, makes it unlawful to drive while under the influence of alcohol and subsection (b)(3) provides that:

   If there was at the time 0.08 per cent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcohol;

2. That section provides that:

   . . . Where injury is caused by the willful failure of the employee to use safety devices . . . or from the intoxication of the employee, compensation provided for herein shall be reduced fifteen per cent . . . .

pens, but is limited to accidental injuries which occur in the course of or arise out of the performance of his duties.[3] A special problem exists in some occupations such as salesmen, where there is elasticity both as to the place and hours of such performance; and wherein it is comparatively easy for an employee, who may suffer an injury at practically any time or place, to contrive a report of being involved in business in order to bring himself under coverage.

■ The other side of the proposition is that in certain occupations there is no reason why some forms of social pleasures or diversions cannot be combined with the performance of duty, or indeed enhance it; and the presence of such a factor does not necessarily mean that one is not in the course of his employment. In such situations, where problems arise as to coverage, one of the tests sometimes applied is whether such a trip is one which someone else would have had to make for the employer at some time if the claimant had not.[4] Another such test, which is sometimes helpful is whether the paramount or predominant motivation and purpose of the trip or other activity is to serve the employer's interest,[5] and the social aspects, or other diversion for one's own interest, is merely adjunctive thereto. In that instance, the person should be deemed to be in the course of his employment.

■ Conversely, if the predominant motivation and purpose of the activity is in serving the social aspect, or other personal diversion of the employee, even though there may be some transaction of business or performance of duty merely incidental or adjunctive thereto, the person should not be deemed to be in the course of his employment; and where there is uncertainty as to the just-stated propositions, that should be resolved by the Commission as the trier of the facts.

Reverting to the issue in this case in the light of what has just been said: the problem presented to the Commission was whether the plaintiff was actually and basically involved in the performance of his duties, or was mainly involved in a social situation with his friend and former employer, and then after he became involved in the accident, claimed that he was engaged primarily in a business situation.

In justification of its conclusion, the Commission noted certain significant facts: that except for his own testimony as to the desirability of doing so, there was no evidence that the plaintiff was directed or required by his employer to go to Park City on the insurance business; and that under the facts shown, there is no reason to believe that anything that needed to be done about increased insurance could not have been done without anyone leaving the Salt Lake office. Consequently, it recited that upon its consideration of the whole evidence, its conclusion was that the plaintiff's trip was primarily social and not within the course of his employment.

■ The burden of proving that the accident occurred in the course of or arising out of his employment was upon the plaintiff. When the Commission remains unpersuaded on a question of fact, this Court does not disagree therewith and compel such a finding unless the evidence is such

---

**3.** Sec. 35–1–45, U.C.A.1953.

**4.** The eminent authority in this field, Professor Larson, upon his analysis of the problem and the authorities thereon, states the proposition this way:

The basic dual-purpose rule, accepted by the great majority of jurisdictions, may be summarized as follows: when a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of failure of the private purpose, though the business errand remained undone;

it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey.

Larson, Workman's Compensation § 18.12.

**5.** See *Ford Motor Co. v. Industrial Commission*, 64 Utah 425, 231 P. 432 (1924); *Thompson v. Industrial Commission*, 83 Utah 171, 27 P.2d 436 (1933).

that all reasonable minds would so find, and the court would thus so rule as a matter of law. On the contrary, if there is a reasonable basis in the evidence (or lack of evidence) such that reasonable minds acting fairly thereon could remain unpersuaded, this Court does not upset the determination made.[6] In applying those rules it is our opinion that the action of the Commission was not so unreasonable as to be capricious and arbitrary.

Affirmed. No costs awarded.

MAUGHAN, HALL and STEWART, JJ., concur.

WILKINS, J., does not participate herein.

---

**6.** See *Kent v. Industrial Commission*, 89 Utah 381, 57 P.2d 724 (1936); *Evans v. Industrial Commission*, 28 Utah 2d 324, 502 P.2d 118 (1972).