**OGDEN STANDARD EXAMINER and State Insurance Fund, Plaintiffs,**

**v.**

**The INDUSTRIAL COMMISSION OF UTAH and Leslie Skelton and T.R. Cheney, Conservators for the dependent children of Clifford Cheney, deceased, Defendants.**

No. 18311.

Supreme Court of Utah.

April 20, 1983.

Robert D. Moore, George M. McMillan, Salt Lake City, for plaintiffs.

David L. Wilkinson, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., Salt Lake City, Gordon J. Low, Logan, for defendants.

DURHAM, Justice:

The plaintiffs have filed a petition for writ of review from an order of the Industrial Commission holding them liable for compensation benefits to the dependents of Clifford P. Cheney. We affirm the order of the Industrial Commission.

The standard of review utilized by this Court in Industrial Commission cases is stringent:

[Our inquiry is] whether the Commission's findings are "arbitrary and capricious," or "wholly without cause" or contrary to the "one [inevitable] conclusion from the evidence" or without "any substantial evidence" to support them. Only then should the Commission's findings be displaced.

*Sabo's Electronic Service v. Sabo,* Utah, 642 P.2d 722, 725 (1982) (quoting *Kaiser Steel Corp. v. Monfredi,* Utah, 631 P.2d 888, 890 (1981)).

In this case, the issue on appeal focuses on the question of whether Mr. Cheney's death arose "out of or in the course of his employment" as the managing editor of the Ogden Standard Examiner. As the managing editor, it was Mr. Cheney's responsibility to supervise the news and editorial content of the newspaper. He did not personally cover news events, nor did he perform any specific public relations duties.

Mr. Cheney died in an automobile accident while he was driving from Salt Lake City to Ogden after attending the annual "Governor's Ball" in the company of Wilda Gene Hatch, president of Standard Corporation, which does business as the Ogden Standard Examiner. On the Monday or Tuesday preceding the Ball, Mrs. Hatch inquired of Mr. Cheney, at the offices of the Ogden Standard Examiner, if he had ever attended the Governor's Ball. He replied that he "had always wanted to go." She told him that she might have extra tickets and would let him know later. On Wednesday afternoon, Mrs. Hatch told Mr. Cheney that she did have extra tickets and invited him and his wife to attend the affair with her, her husband, her son and her daughter-in-law. The tickets in question had been given to Mrs. Hatch's husband by persons who had purchased them but had decided not to attend. Mr. Hatch had already reserved a table at the Governor's Ball for eight persons, with the intent of spending the evening with persons who worked in companies affiliated with Standard Corporation. Mr. and Mrs. Hatch invited their children and the Cheneys to use four of the available tickets. Mr. Cheney and his wife accepted the invitation. They were also invited to the Hatch's home in Salt Lake City for cocktails before the dinner and for conversation afterwards. There was no discussion regarding the business of the Ogden Standard Examiner at any time during the evening.

The testimony showed, and the Industrial Commission found in its Findings of Fact, that Mr. Cheney accepted the invitation to attend the Governor's Ball for business purposes. He intended to discuss editorial policy with Mrs. Hatch, to present his views of his duties as the managing editor, and to ascertain the scope of his editorial authority in connection with the Ogden Standard Examiner. He attended the Ball for business, rather than social, reasons and considered his expenses in connection with the occasion, *e.g.,* the rental of evening clothes, as tax deductible expenses. Mrs. Hatch, on the other hand, considered the invitation a social one, and did not intend that the evening would be spent on business matters, although she never expressed that intent to Mr. Cheney. Because she did not initiate any discussion of issues affecting her newspaper, Mr. Cheney apparently did not find it appropriate to begin such a discussion.

The meaning of U.C.A., 1953, § 35–1–45 has been considered by this Court in a number of factual circumstances. The statute provides for compensation for "the dependents of every . . . employee who is killed, by accident arising out of or in the course of his employment, wheresoever such injury occurred . . . ." The plaintiffs rely heavily on the recent case of *Martinson v. W–M Insurance Agency, Inc.,* Utah, 606 P.2d 256 (1980), in which this language was construed. In the *Martinson* case, an officer-employee of an insurance agency combined business with pleasure on an overnight trip to Park City to visit a friend, who was also a client. The officer-employee was injured while driving back to Salt Lake City. This Court identified the issue there as follows: "the problem presented to the Commission was whether the plaintiff was actually and basically involved in the performance of his duties, or was mainly involved in a social situation with his friend and former employer, and then after he became involved in the accident, claimed that he was engaged primarily in a business situation." *Id.* at 258. The opinion cited the facts relied on by the Commission in denying compensation and upheld the Commission's order, noting that "if there is a reasonable

basis in the evidence (or lack of evidence) such that reasonable minds acting fairly thereon could remain unpersuaded, this Court does not upset the determination made." *Id.* at 259 (citations omitted). Some further portions of the *Martinson* opinion, which discuss the problem of the combination of business and social factors in a given activity, are helpful in this case:

> The other side of the proposition is that in certain occupations there is no reason why some forms of social pleasures or diversions cannot be combined with the performance of duty, or indeed enhance it; and the presence of such a factor does not necessarily mean that one is not in the course of his employment. In such situations, where problems arise as to coverage, one of the tests sometimes applied is whether such a trip is one which someone else would have had to make for the employer at some time if the claimant had not. Another such test, which is sometimes helpful is whether the paramount or predominant motivation and purpose of the trip or other activity is to serve the employer's interest, and the social aspects, or other diversion for one's own interest, is merely adjunctive thereto. In that instance, the person should be deemed to be in the course of his employment.

> Conversely, if the predominant motivation and purpose of the activity is in serving the social aspect, or other personal diversion of the employee, even though there may be some transaction of business or performance of duty merely incidental or adjunctive thereto, the person should not be deemed to be in the course of his employment; and where there is uncertainty as to the just-stated propositions, that should be resolved by the Commission as the trier of the facts.

*Id.* at 258 (citations omitted).

■ The first test enunciated in the *Martinson* decision is clearly not met by the facts here. However, the second test is.

There was substantial evidence before the Commission that Mr. Cheney's "paramount or predominant motivation and purpose" in making the trip was to serve the interest of the Ogden Standard Examiner. In addition, from Mr. Cheney's point of view, there were no "social aspects, or other diversion for [his] own interest." The fact that the employer intended the affair to be purely social does not require a different result, at least when the employer's intentions are not communicated to the employee. If Mrs. Hatch had informed Mr. Cheney that no business would be discussed, there is some indication in the evidence that he would have declined her invitation.[1] Under the circumstances, Mr. Cheney was entirely justified in inferring a business purpose from the invitation, and the Commission was justified in relying on his motives and purposes in accepting it and in holding that the trip to Salt Lake City arose out of or was in the course of his employment. We do not find that the Commission's findings are arbitrary and capricious or without any substantial evidence to support them.

The plaintiffs raise a related point of error in arguing that the Commission, in making findings about Mr. Cheney's motives and purpose for attending the Governor's Ball, relied on incompetent evidence, namely, hearsay. It is true that all of the testimony regarding Mr. Cheney's state of mind came from persons to whom he made statements about his forthcoming attendance at the affair. However, such statements were all admissible. *See* Utah R.Evid. 63(12). We therefore deem this point to be without merit.

Affirmed. No costs awarded.

HALL, C.J., and OAKS and HOWE, JJ., concur.

STEWART, J., concurs in the result.

---

1. The testimony showed that the Cheneys had out-of-town houseguests whose visit was scheduled to end the day after the Governor's Ball, and that the Cheneys felt some reluctance to miss their last evening together.