No. 41,186

LEONA WALTERS, Widow, and LEONA WALTERS, as Guardian and for the Benefit of DIANNE MARIE WALTERS, LINDA LOUISE WALTERS and JANET CATHERINE WALTERS, Minors, Dependents of Ernest J. Walters, Deceased Workman, *Appellant,* v. GREENLAND DRILLING COMPANY and CONSOLIDATED UNDERWRITERS, its Insurance Carrier: MURFIN DRILLING COMPANY and EMPLOYERS CASUALTY COMPANY, its Insurance Carrier; THE CARTER OIL COMPANY (Self-Insurer), *Appellees.*

(334 P. 2d 394)

Opinion filed January 24, 1959.

*Norbert R. Dreiling,* of Hays, argued the cause, and was on the briefs for the appellant.

*Tudor W. Hampton,* of Great Bend, argued the cause, and *Jerry M. Ward,* of Great Bend, was with him on the brief for appellees Greenland Drilling Company and its insurance carrier, Consolidated Underwriters.

*H. Lee Turner,* of Great Bend, argued the cause and was on the brief for appellees Murfin Drilling Company and its insurance carrier, Employers Casualty Company.

*Clayton S. Flood,* of Hays, argued the cause, and *Jesse H. Foster, Jr.,* of Tulsa, Oklahoma, and *E. C. Flood,* of Hays, were with him on the brief for appellee The Carter Oil Company.

The opinion of the court was delivered by

Jackson, J.: This is an appeal from the award in a workmen's compensation case growing out of the death of Ernest J. Walters. The only question in dispute between the parties is the amount due to the widow and other dependents of Mr. Walters. The deceased met his death by accident while performing his duties as an oil field pumper for the Greenland Drilling Company. His annual wage from his employment with Greenland was $720, but it was alleged and agreed that he was also employed as an oil pumper for Murfin Drilling Company at a weekly wage of $13.85 and by the Carter Oil Company at a weekly wage of $26.30; that the decedent's duties were such that he was able to hold all three jobs concurrently. Claimants maintain the decedent's annual wage should be computed by including his earnings from all three companies.

Both the workmen's compensation commissioner and the district court held that only the compensation received from Greenland could be considered in fixing the amount of the award and that claimants were entitled to the minimum compensation payable under the act amounting to $2,500 exclusive of medical, hospital and funeral benefits. Claimants have appealed to this court urging that the award should have been based upon the total annual income of the deceased as an oil field pumper and should have amounted to $8,422.80.

The appeal presents an interesting question of law and has been well briefed and argued by counsel for all of the parties.

Appellant argues rather logically that the purpose and idea of the workmen's compensation act is that industry shall bear the loss caused by injury and death incurred in the conduct of business, and that the totally dependent family of Mr. Walters should be entitled to an award based upon his total annual earnings. They cite G. S. 1955 Supp. 44-510 (which applied to this accident) reading in part as follows:

"(2) *Where death results from the injury.* (a) If a workman leaves any dependents wholly dependent upon his earnings, a sum equal to three (3) times his average yearly earnings, computed as provided in section 44-511 of the General Statutes of 1949 and any amendments thereto . . ."

The difficulty in adopting appellant's argument arises from the fact that all liability under the workmen's compensation act is entirely statutory, and that it is difficult under our act to find a basis for computing an award as urged by appellants. Furthermore, a

study of the history of the Kansas act further complicates the difficulty.

It should be noted that one of the early workmen's compensation acts was adopted in Great Britain and that the British act contained a provision which clearly provided for an award of compensation being based upon all of the concurrent contracts of employment held by the workman at the time of his injury. Many states of this country, including Kansas, seem to have used the British act as a model in adopting their own workmen's compensation acts. The case of *Dewhurst v. Mather*, (1908) 2 K. B. (Eng.) 754, 99 L. T. N. S. 568, was a case involving the application of this portion of the British act, which is set forth in the following quotation:

"It seems to me to come exactly within the language of the First Schedule, clause 1, sub-s. 2(*b*), which contains these words relating to the earnings of a workman: 'Where the workman had entered into concurrent contracts of service with two or more employers, under which he worked at one time for one such employer and at another time for another such employer, his average weekly earning shall be computed as if his earnings under all such contracts were earnings in the employment of the employer for whom he was working at the time of the accident.' The Act obviously contemplates a case in which the engagement is not for the whole time, but for a portion of time with one employer and for a portion of time with another employer." (p. 756.)

The first Kansas workmen's compensation act was enacted as L. 1911, ch. 218, and in section 12 of that act we find the following language:

"(*b*) Where the workman had entered into concurrent contracts of service with two or more employers under which he worked at one time for one such employer and at another time for another such employer, his 'earnings' and his 'average earnings' shall be computed as if his earnings under all such contracts were earnings in the employment of the employer for whom he was working at the time of the accident."

The above language remained a part of the section of our workmen's compensation act for some time. The particular section came to be numbered section 44-511 in the Revised Statutes of 1923, and has retained that designation to the present time. The only case in Kansas in which the particular clause seems to have been attempted to be applied was *Walton v. Electric Service Co.*, (1926) 121 Kan. 480, 247 Pac. 846. In the Walton case the workman was employed by the electric company and also by the city of Bucklin. The claimant contended the award should be based upon earnings received from both jobs. This court refused to follow claimant's contention since the city was not operating under the workmen's compensation

act. The Walton case is noted by the annotator in the annotation in 58 A. L. R. 1395 at page 1397, and the similarity of the Kansas statutory provision with that of the British act is also noticed.

In 1933, the legislature amended section 44-511 by removing the provisions taken from the British act. By L. 1933 (special session), ch. 74, sec. 1, the pertinent portion of section 44-511 was amended to read:

"That section 44-511 of the 1931 Supplement to the Revised Statutes of the state of Kansas, 1923, being section 11 of chapter 232 of the Session Laws of Kansas, 1927, by amending to read as follows: Section 44-511, *Rules for compensation.* (1) Whenever in this act the term 'wages' is used it shall be construed to mean the *money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident . . ."* (Italics supplied.)

The above language is identical with the present provisions of the statute G. S. 1957 Supp. 44-511.

If the provisions of the act of 1911 were still in the workmen's compensation act, there would be little doubt but that the appellants might prevail in the present appeal. But in *Hauserman v. Clay County,* 89 Kan. 555, 132 Pac. 212, the rule of statutory construction relating to the repeal of a specific provision of an existing statute is stated as follows:

"When a statute is revised, some parts being omitted, the ommitted parts are not readily to be supplied by construction, but are ordinarily to be considered as annulled." (Syl. ¶ 1.)

In *Schmeling v. F. W. Woolworth Co.,* 137 Kan. 573, 21 P. 2d 337, this same rule of statutory construction was applied to another part of the workmen's compenstion act. The second paragraph of the syllabus of the Schmeling case reads:

"The fact that the workmen's compensation law of 1917, chapter 226, required notice to be given of all elections or withdrawals of employers of both classes, hazardous and nonhazardous, and in the revision of that law in the law of 1927, chapter 232, a definite exception was made as to employers privileged to elect, in the section requiring others to give notice, is a strong reason in favor of it being a deliberate legislative intent to omit that requirement as to such employers."

The above rule is well known in all jurisdictions as evidenced by the citations found in the general research texts, see 82 C. J. S. 846, Statutes, sec. 370; 50 Am. Jur. 332, Statutes, sec. 340.

All the parties discuss the case of *Kirkpatrick v. Yeamans Motor Co.,* 143 Kan. 510, 54 P. 2d 960. This case was decided in 1936, subsequent to the repeal of the clause relating to concurrent con-

tracts as a basis for determining earnings. In the Kirkpatrick case the workman was a night watchman who had been engaged by two adjoining used car companies to guard the cars on the two premises which were separated by a city street. The workman was killed, apparently by a hit and run driver, and his body was found in the street between the properties.

No claim was made against both of the employers, but an award was approved as to the employer whose lot the watchman seemed to be approaching at the time of his death. The court did cite several cases from other jurisdictions in which awards against concurrent and joint employers were approved. The point under discussion was, however, the question of whether the workman was acting as an employee of the defendant at the time of his injury. It was shown that one having concurrent contracts of employment may be the servant alternatively of one master and then of another. The cases referred to were in point on that issue.

Appellant endeavors to avoid the question of why no claim was filed based upon the earnings from both employers involved in the Kirkpatrick case. It might seem that counsel there believed that the Kansas statute did not permit such recovery. The case is really of no great weight as to the case now before the court. Here at least, we do have a claim interposed in good faith.

Appellant has cited a rather large number of decisions allowing recovery based upon more than one contract of employment. First of all, each case must stand or fall upon the particular provisions of the workmen's compensation act there involved, and none of them present the statutory and factual situation found in the case before us.

Two cases which come as near to the present case as any are *Western Metal Supply Co. v. Pillsbury,* 172 Cal. 407, 156 Pac. 491, Ann. Cas. 1917 E 390, and *Geneva-Pearl O. & G. Co. v. Hickman,* 147 Okla. 283, 296 Pac. 954.

In the California case the workman was a night watchman. He was employed by six different business places to guard their premises. They knew he had more than one contract of employment, although possibly not just the full extent of his duties. Though the court found there was no joint contract, and that the employers did not constitute an association, the decision of the majority of a sharply divided court was that recovery could be had based upon the earnings under all six contracts, but only against the employer on whose

premises the workman was killed. The majority opinion said in part:

"Finally, the petitioner claims that the award against it should be based, not upon Mason's total earnings, but upon the amount (*i. e.,* thirty dollars per month) which he received from it. The solution of this question is by no means free from difficulty. At first sight there is much plausibility·in the contention that an employer, whose liability is based on the earnings of his employee, should not be compelled to pay an award measured by the earnings received by the employee from others. *The statute contains no provision which can be said to point to a clear solution of this problem. Probably the framers of the act did not have in mind the specific case of a workman employed in a given capacity by different employers, to each of whom he rendered services for a portion of his time.* It must be remembered, however, that the main purpose of the act is to indemnify the workman for the loss suffered by him. The indemnity takes two forms—the furnishing of medical attention, and payment of a proportion of the earnings lost in consequence of the injury. In case of death, the amount payable is a percentage 'of the average annual earnings of the deceased employee.' A fair compensation is to be paid to the employee, or to the dependents who have lost in him their source of support. It should be based upon the amount which the employee was in the habit of earning in the particular kind of employment, rather than the amount which he had been receiving from a particular employer. This was the view taken by the supreme judicial court of Massachusetts in dealing with a statute which, in this regard, is not unlike our own. A longshoreman was injured while working for a steamship company. He had been employed part of the time by this company, and had earned, on an average, eight dollars per week from it. His total earnings from all employers averaged thirteen dollars per week. It was held, in Gillen's case (215 Mass. 96 [L. R. A. 1916A, 371, 102 N. E. 346]), that the award of compensation was properly based upon the employee's average weekly earnings as longshoreman from all sources." (Italics supplied.)

The facts in this case differ in that here there is no showing of knowledge on the part of the employers that Walters was employed by other companies. Further, it was stipulated that none of the employers received any benefit from Walters' employment elsewhere than on the employer's own property.

Turning to our statute, the Kansas legislature certainly knew something of employment under concurrent contracts. The 1911 act adopted the English provisions which had been construed by the English courts (see 30 A. L. R. 1000, 1002) and the Kansas act had been before this court in *Walton v. Electric Service Co.,* supra. With this knowledge, the Kansas legislature deliberately removed from our statute and repealed the provisions for basing wages on concurrent contracts.

Again in the Hickman case from Oklahoma referred to above, the

court said as to an oil pumper who had been engaged to pump oil on *two adjoining leases*:

"The rule announced in each state depends largely, of course, upon the statute of the particular state. The rule we announce must depend upon our interpretation of our statutes. The controlling statute here is section 7289, C. O. S. 1921, which is as follows:

. . . . . . . . . . . . .

[setting out statute]

"*These provisions seem to make the 'average' weekly wages of the injured employee at the time of the injury the basis upon which compensation shall be determined. It is not based upon the employee's contract with any particular one of his employers, but with all of them. It is based upon the average weekly wages he receives from the business .or occuption in which he is engaged.*" (p. 284.) (Italics supplied.)

The above would seem to be sufficient to distinguish the Oklahoma statute from our own.

There would seem to be no necessity to examine each of the other cases in this opinion. None of them are in point as to this case. If the legislature should desire to restore a workman's right under the compensation act to recover an award based upon all his earnings from all his contracts of employment, it may easily do so by restoring to the statutes the provisions repealed by the 1933 amendment of section 44-511. Under the present history of sections 44-510 and 44-511, consideration of mere concurrent contracts must be construed to be forbidden for the purpose of arriving at a workman's annual earnings. Under the present provisions of the statute, appellants must fail in their contentions, and the orders of the district court must be affirmed.

It is so ordered.