No. 46,846

ETHEL NEWMAN, *Appellee,* v. A. W. BENNETT, F. L. ALQUIST, L. B. CAMPBELL and ALE OIL COMPANY, d/b/a Derbyshire Lease, and WESTERN CASUALTY AND SURETY COMPANY; L. B. CAMPBELL, d/b/a 53 State Street Lease, and WESTERN CASUALTY AND SURETY COMPANY; A. W. BENNETT, F. L. ALQUIST, L. B. CAMPBELL and ALE OIL COMPANY, d/b/a Clopton Lease, and WESTERN CASUALTY AND SURETY COMPANY; L. B. CAMPBELL, d/b/a Boles Lease, and WESTERN CASUALTY AND SURETY COMPANY; CLOIDE HENSLEY and CONTINENTAL INSURANCE COMPANY; DEWEY F. WEAVER, *Appellants.*

(512 P. 2d 497)

Opinion filed July 14, 1973.

*John G. Atherton,* of Mellinger, Atherton and Hurt, of Emporia, argued the cause and was on the brief for the appellant-holders of the Derbyshire, 53 State Street, Clopton, and Boles leases, and their insurance carrier, Western Casualty and Surety Company.

*Harry E. Robbins, Jr.,* of Gamelson, Hiebsch, Robbins and Tinker, of Wichita, argued the cause, and *George Forbes,* of Tulsa, Okla., was with him on the brief for appellants Cloide Hensley, Continental Insurance Company and Dewey F. Weaver.

*Stanley R. Ausemus,* of Emporia, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMON, C.: This is a workman's compensation proceeding brought by the widow of an oil field pumper who was killed in an automobile intersection collision. The examiner, the director of workmen's compensation upon review, and the trial court upon appeal each awarded compensation.

The issues are whether the death arose out of and in the course

of decedent's employment, and if so, which of decedent's six employers are liable, and to what extent.

On February 18, 1970, the date of the fatal accident, the decedent, David W. Newman, resided in Madison, Kansas. He was employed as a pumper upon six separately owned oil and gas leases. His duties included daily checking and servicing of the wells on the six leases, inspecting the pumps, tanks, salt water and lines on each, and keeping the wells in proper operation. He had full authority to do whatever needed ·to be done. When anything went wrong he was expected to repair it as soon as possible. On occassion it was necessary for him to go into Madison in order to procure repairs. He traveled in his own pickup truck upon which he carried tools, equipment and supplies belonging to his employers, which he used in his work.

The leases which decedent serviced were known as the Derbyshire, Clopton, Weaver, 53 State Street, Hensley and Boles. The first four were west and northwest of Madison, the Hensley lease was about three miles directly north of Madison while the Boles lease was five miles east of that town. L. B. Campbell was the operating partner in two of the leases and the owner-operator in two others. The working interests were not identical in all of these leases. Dewey F. Weaver and Cloide Hensley each owned the lease bearing his name.

Decedent was hired separately for each lease. He first went to work as a pumper in 1958 on one of Mr. Campbell's leases at which time he lived in a house next to the lease. In subsequent years he was hired to pump the others, the last in about 1966. Meanwhile he had moved into Madison. He was paid a monthly salary by each employer in amounts varying from $50.00 to $275.00. He paid the operating expense of his pickup truck.

Mr. Campbell testified he knew decedent was pumping all six leases but he gave no instructions as to which of his leases were to be pumped first or what route decedent should take and he was not familiar with the route taken; the owner of the Weaver lease testified he knew decedent pumped the Campell leases but knew nothing about the Hensley lease and was not familiar with the route taken by decedent; the owner of the Hensley lease testified he did not know how many wells decedent pumped, he prescribed no route and was not familiar with the route decedent traveled.

Decedent's widow, his son, a friend and his relief pumper testified as to the route he had taken many times to their knowledge. This

testimony indicated decedent followed no set pattern but had discretion as to his route. Generally he first serviced the four wells west and northwest of Madison, visiting in turn the Clopton, Derbyshire, Weaver and the 53 State Street leases. Sometimes he returned to Madison for lunch and completed the remainder of his pumping tasks in the afternoon, but not always. Sometimes he would go first either to the Boles or the Hensley lease and service both of them before going to the other four leases. He had no fixed hours of employment.

On the day in question decedent was seen about 10:00 a. m. leaving the Weaver lease and proceeding north in the direction of the 53 State Street lease (about thirty miles travel is required to go from Madison to the Weaver lease). The accident occurred about thirty minutes later. Decedent was driving his truck from the west, going east on a county road across K 99 highway when it collided with a vehicle northbound on the highway. This intersection is about one and one half miles north of Madison and decedent was apparently on his way either to Madison or to the Hensley or Boles lease. Mr. Newman died two days later as a result of a skull fracture sustained in the collision.

The examiner, the director and the trial court each made extensive findings in awarding compensation to the widow, to be paid by each employer proportionately. Each emphasized the fact decedent was carrying tools and supplies in his pickup truck belonging to various employers, each found he was furthering the interests of all employers and each determined that dual employment, as distinguished from joint employment, existed at the time of the collision. (Initially each respondent denied the employer-employee relationship contending instead that decedent was an independent contractor but this contention has now been dropped.) The examiner found that the going-and-coming-to-work rule expressed in that which is now K. S. A. 1972 Supp. 44-508 (k) was not applicable since decedent was following a route, his position being analogous to that of a traveling salesman injured while carrying the goods of more than one employer. Both the examiner and the director indicated that if the accident had occurred upon the premises of one lease then that particular lessee would have been solely responsible. The director found decedent was required by the nature of his work to travel by vehicle and therefore was subject to the hazards of the road while going from lease to lease. The trial court ap-

proved the findings made by the examiner and the director and further found:

"2. All respondents claim that the death of Mr. Newman did not arise out of and in the course of his employment. They emphasize the provisions of K. S. A. 44-508 (k). They predicate their position on the contention the decedent was on his way to or from work so far as each of them is concerned. I do not believe this position is tenable. An oil field pumper is ordinarily at work the moment he arrives at his pickup in the morning and continues to be so until he returns from servicing the leases. I do not intend to indicate by this opinion that every worker who carries hand tools to his job is at work during the time he is traveling to and from the place where he uses the tools. It should be kept in mind in this case, however, that there was more than the incidental carrying of small tools. As is usual with oil field pumpers in this area, Mr. Newman had provided himself with a pickup truck. This truck was a necessity, because it was used to carry heavy tools, parts from the lease that need to be repaired, and supplies to be used on the lease such as oil and grease. An ordinary passenger vehicle would not have been adequate. The tools and supplies he carried were not his own. Most of them belonged to Mr. Campbell. It was his job, moreover, to go to the store to obtain supplies before going to the leases. For instance, the testimony shows that the 53 State Street lease engine used oil, which he carried with him to add when needed.

"As a practical matter, the practice of oil field pumpers in this area cannot be compared to 'moonlighting' as suggested by counsel. Mr. Newman was required to make a round trip of more than forty miles daily to service some of his leases. He could not have afforded to take care of them for the compensation received if he could not combine the servicing of several of them as one operation. I am in agreement with the examiner and the director that at the time of his death decedent was engaged in caring for the business of all the respondents.

"A question of burden of proof has been raised. To meet a burden of proof the claimant need only show that her claim is more probably true than not true. She has met that burden."

Appellants generally attack the finding that the death arose "out of" and "in the course of" his employment with them. The meaning of these two requirements was discussed in *Siebert v. Hoch*, 199 Kan. 299, 428 P. 2d 825, thus:

"Our workmen's compensation act (K. S. A. 44-501) provides that in order to be compensable an accidental injury must arise 'out of' and 'in the course of' the employment. The two phrases have separate and distinct meanings . . .; they are conjunctive and each condition must exist before compensation is allowable . . .; and as to them every case must be determined upon its own facts.

"The phrase 'in the course of' employment relates to the time, place and circumstances under which the accident occurred, and means the injury happened while the workman was at work in his employer's service. . . .

"This court has had occasion many times to consider the phrase 'out of'

the employment, and has stated that it points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. . . .

"This general rule has been elaborated to the effect that an injury arises 'out of' employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. . . .

"An injury arises 'out of' employment if it arises out of the nature, conditions, obligations and incidents of the employment. . . . [T]he foregoing tests exclude an injury not fairly traceable to the employment and not coming from a hazard to which the workman would have been equally exposed apart from the employment." (pp. 303-304.)

For their contention the collision did not arise out of and in the course of decedent's employment appellants assert travel was not a part of his work, that his job was done on each separate lease unless he had to go to town for supplies or parts and at best he was only going from one job to another when he met with his accident. They argue there is no evidence showing the accident occurred while decedent was engaged in the work of any of his employers, or that his death was in any way work connected and cite the going-and-coming-to-work rule in K. S. A. 1972 Supp. 44-508 (k) as precluding recovery. This statute provides:

"The words 'arising out of and in the course of employment' as used in this act shall not be construed to include injuries to the employee occurring while he is on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence. An employee shall not be construed as being on his way to assume the duties of his employment or having left such duties at a time when the workman is on the premises of the employer or on the only available route to or from work which is a route involving a special risk or hazard and which is a route not used by the public except in dealings with the employer."

Appellee responds by pointing out the limited scope of our review where there is some evidence of connection or relation between the work for which the claimant was employed and his injury or death, citing *Mitchell v. Mitchell Drilling Co.*, 154 Kan. 117, 114 P. 2d 841. There the deceased workman was employed as a "tool pusher" for a drilling company and was also president of the company. He was killed when a company car driven by him crashed into a culvert. The car had equipment on it used in drilling operations. Immediately prior to the collision the decedent had been supervising two different operations at different locations, traveling by automobile. He had been losing sleep because of looking after a "wild"

gas well. At the time of the fatal collision he seemed to be on his way to a particular well which it was necessary for him to supervise, although there was no direct evidence to that effect. The fact-finder determined the death arose out of and in the course of the workman's employment. On appeal this court upheld the award of compensation against the challenge the finding that the accident arose in the course of the decedent's employment was based on surmise and conjecture. As to the nature of the proof requisite it was held:

"A claim under the workmen's compensation act may be established by circumstantial evidence alone and it is not necessary such evidence should rise to a degree of certainty which will exclude every reasonable conclusion other than that found by the trial court." (Syl. ¶ 2.)

Whether an accident arises out of and in the course of the workman's employment depends upon the facts peculiar to the particular case (*Carter v. Alpha Kappa Lambda Fraternity,* 197 Kan. 374, 417 P. 2d 137).

Here the circumstances revealed, and the fact-finders so declared, the nature of the decedent's work was such that he was expected to use a pickup truck as a part of his employment with all of his employers. He was required to haul heavy tools, equipment and supplies in servicing the leases and keeping the wells in operation. Use of the truck was vital in making repairs as promptly as possible. His duties were not confined to particular premises nor was his pay dependent solely on services to be performed "on the premises" of each particular lease. Driving a pickup truck, as distinguished from an ordinary passenger automobile, and having it available for immediate use when needed, was definitely a part of the service for which the decedent was being compensated by each employer. It cannot be said that such travel was of a type purely personal to him—he was required to have certain equipment and supplies with him and available while on duty and also to have a mode of rapid transportation. Clearly travel on the public highway was regarded by all as a part of his work.

The trial judge, with his many years of experience in one of the midwest's oldest oil fields, had no difficulty in relating decedent's fatal journey with his work as a pumper for all six of his employers, primarily on the basis that a pickup truck constitutes substantially more to a pumper than a mere means of transportation to and from work.

The workmen's compensation act does not require that the acci-

dent occur on or about the employer's premises (*Casebeer v. Casebeer,* 199 Kan. 806, 433 P. 2d 399). There was substantial evidence to support the finding that decedent was in the course of his employment with appellants at the time of the collision and that finding must control. We would not be heard to say the mere fact that an employee, while going to or returning from work, is carrying with him some of the paraphernalia of his work, in itself, converts the trip into a part of the employment (see *Tompkins v. Rinner Construction Co.,* 194 Kan. 278, 398 P. 2d 578); however, the presence of such equipment in the employee's vehicle at the time of the accident is a circumstance which may be considered with all other evidence in determining compensability (1 Larson's Workmen's Compensation Law, § 18.24).

If an employee is in the service of his employer at the time an accident occurs by reason of risk or hazard inherent in the use of a public road, it follows that the resultant injury or death arose out of the employment. The criterion is not that other persons are exposed to the same risk, but that the employment renders the employee peculiarly subject to the danger (*Mitchell v. Mitchell Drilling Co.,* supra; *Bell v. Allison Drilling Co.,* 175 Kan. 441, 264 P. 2d 1069).

We hold that recovery of compensation is not precluded by the provisions of K. S. A. 1972 Supp. 44-508 (*k*) and the trial court did not err in finding that the fatal accident arose out of and in the course of decedent's employment with appellants.

Complaint is made by some of the appellants respecting the apportionment of the award among them. Based upon annual average earnings of $9,480.00—the total earnings received by decedent from all six employers—an award for maximum death benefits was made in favor of appellee, and the liability of each of the employers was apportioned on the basis of the percentage of total wages each paid to the decedent. We must agree with the comments made by the examiner and the director that, generally speaking, had the accident occurred upon the premises of one specific lease then that particular lessee would have been solely responsible for the compensation (see *Walters v. Greenland Drilling Co.,* 184 Kan. 157, 334 P. 2d 394); however, that is not our situation where the accident occurred "off premises" and was not clearly identifiable with any particular employer but nonetheless arose out of and in the course of multiple employment with all employers. In a situation of dual or multiple employment where injury occurs

while the workman is performing a duty common to all employers, then it is only fair and logical that any award of compensation should be borne by all in proportion to the wages each has been paying. Each employer's interest in the workman's services and in his remuneration is fractional and no reason appears here for varying those fractions in determining the amount of compensation each should pay (see 1A Larson's Workmen's Compensation, § 48.50). The trial court's apportionment was appropriate.

We find no reason to disturb the judgment and it is affirmed.
APPROVED BY THE COURT.

PRAGER, J., not participating.