HARTFORD ACCIDENT AND INDEMNITY COMPANY, Respondent,

v.

The TRAVELERS INSURANCE COMPANY, Appellant.

No. KCD 27009.

Missouri Court of Appeals, Kansas City District.

July 7, 1975.

Jack B. Robertson, Gary E. Lowe, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for appellant.

David C. Trowbridge, Dennis P. Wilbert, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

Plaintiff brought this suit for contribution toward compensation, expenses and attorney fees paid by plaintiff as a result of a compensable injury suffered by Donald E. Harpold. Plaintiff was the Workmen's Compensation insurer for Morgan Supply Company of Missouri (Missouri Company) and defendant was the Workmen's Compensation insurer for Morgan Supply Company of Kansas (Kansas Company). Plaintiff's petition was based on the allegation that Harpold was a joint employee of both the Missouri Company and the Kansas Company at the time he sustained his injury, but such claim was filed against the Missouri Company only. Defendant denied the joint employment, but the court, sitting without a jury, found for the plaintiff and entered a judgment in its favor for $4,198.63, which was one-half of the total amount expended by plaintiff on the claim made by Harpold.

Defendant does not raise any objection to the amount of the judgment, nor does it question the right of plaintiff to recover under the theory of contribution if there was in fact a joint employment of Harpold by both Companies. Defendant raises only two points on this appeal. The first challenges the finding of the trial court that Harpold was jointly employed. This requires a review of the evidence.

All of the evidence was submitted by deposition except for a transcript of the hearing before the Kansas Workmen's Compensation Commission. Harpold began work for the Missouri Company prior to 1961. Harpold was a salesman who called on plumbing retailers and contractors for the purpose of taking orders to be filled by the Missouri Company. His territory consisted of the State of Kansas and an area around Nevada, Missouri, although Harpold made some calls as far north as Harrisonville, Missouri. The Missouri Company was owned by Ed Morgan and his wife, but associated with them in the conduct of the business was their son-in-law, Ed Fleming. Mr. Fleming was vice-president of the Missouri Company. At this time Harpold's supervisor was Ed Morgan and Harpold testified that Morgan was his only superior.

Subsequent to 1961, and prior to Harpold's accident in 1966, a discussion between Morgan, Fleming and Harpold resulted in a decision to form the Kansas Company. Apparently this decision was brought about by the feeling a separate company in Kansas

would help develop the Company's business in Kansas. Harpold became one of the incorporators of the Kansas Company and was listed as a vice-president, although he stated his function as an incorporator and officer was largely of a pro forma nature to satisfy the requirements of establishing a Kansas corporation. Since Harpold was the only salesman the Missouri Company had in Kansas, it was decided he would continue to cover Kansas as a salesman for the Kansas Company and at the same time would continue to cover his Missouri territory.

According to Harpold, Ed Morgan remained his supervisor because Morgan and his wife owned both the Missouri and the Kansas Companies. Morgan was president of the Missouri Company and secretary-treasurer of the Kansas Company. Harpold would write orders for both the Missouri and Kansas Companies from business which he developed in Kansas. He stated the orders would be written on either the Missouri or Kansas Company depending on the location of the point of delivery. This latitude in choosing which Company received the business resulted from the transportation regulations governing the metropolitan Kansas City area. Because of these regulations, some orders, if filled by the Kansas Company would have to go from Olathe, Kansas, the location of the Kansas Company, to Kansas City and then out to the delivery point in Kansas. Other orders could be filled direct from the Olathe office, while others could be filled direct from the Missouri office in Kansas City. Mr. Fleming testified that even though an order might be written on one Company, it could and was on occasion filled by the other Company and the Kansas Company would bill for orders filled by the Missouri Company when the order was written on the Kansas Company. Harpold stated he would decide which Company an order would be written on at the time he wrote the order, except in the case of extremely large orders, in which event he would hold a conference with either Fleming or Morgan and

decide on which Company the order would be written. When direct inquiry was made of Harpold as to which Company employed him, he stated he worked for both Companies.

While the Missouri and Kansas Companies were operated as separate corporations, it is clear from the testimony of Harpold and Fleming that Ed Morgan owned both Companies and was in reality the person who exercised ultimate control over the operation of both Companies and Harpold. Fleming testified that as president of the Kansas corporation he did supervise Harpold's activities on a day-to-day basis, although he stated Morgan did indirectly supervise Harpold.

Harpold was paid by the Missouri Company, which was reimbursed by the Kansas Company in proportion to the amount of Kansas sales made by Harpold. In addition, Harpold received a commission and the Kansas Company likewise reimbursed the commission due on Kansas sales. This resulted in the Kansas Company paying about 80% of his salary. Fleming testified the payroll for Harpold was handled in this manner because at the time the Kansas Company began business it was a small operation and Harpold was already on the Missouri Company payroll. Mr. Torbert, the CPA who kept the books for both the Missouri and Kansas Companies, testified Harpold was paid in the above described manner and further stated it was simpler to carry him on only one payroll than it was to have him on two.

Ed Morgan was deceased at the time of trial so his testimony was not available. However, from the testimony of Harpold, Fleming and Torbert, there is no doubt Harpold was jointly employed by both the Missouri and Kansas Companies and that he was subject to the ultimate control of Morgan who owned both Companies and was also subject to day-to-day control by Fleming as president of the Kansas Company. While the two Companies were organized

and existing as separate Companies, in fact they were owned and controlled by the same persons and their business was so intertwined they in fact almost operated as a single Company insofar as Harpold was concerned. Harpold had full authority to write orders on both Companies, with the right to decide on which Company a particular order would be written, except in exceptional circumstances. Thus, it would be virtually impossible to say at any given time that Harpold was employed by one Company and not the other.

Defendant bases its claim of failure of proof on portions of the testimony of both Harpold and Fleming. Each had signed a statement for defendant's claim agent in which each stated Harpold on the day of the accident was employed by the Missouri Company. However, their sworn testimony differed from such statements. It is true both Harpold and Fleming made isolated statements which would tend to cast doubt on joint employment but a fair consideration of the evidence as a whole strips away the doubt cast by these fragmentary views.

The hoary test of the master-servant relationship is the right of control. *Lawson v. Lawson*, 415 S.W.2d 313 (Mo.App.1967). That test is met here by showing the actual owner of both Companies had control of Harpold, with a delegation of authority to Fleming through the Kansas Company to exercise control also. Under this ancient test, the evidence showed beyond cavil Harpold was a joint employee of both Companies.

The review in this case under rule 73.01 ¶ 3(a), V.A.M.R., is upon both the law and the evidence as in suits of an equitable nature. "The nature of review in equity cases has historically demanded that due deference be given to the findings and conclusions of the trial chancellor, and that this rule of deference not be ignored 'unless the evidence is palpably insufficient to sustain the findings.'" *R. L. S. v. J. E. S.*, 522 S.W.2d 5[2] (Mo.App.1975).

The evidence outlined above is more than sufficient to sustain the findings of the trial chancellor and for that reason the finding of the trial court that Harpold was the joint employee of both the Missouri and Kansas Companies must be sustained.

Defendant's second point is that the court should have applied Kansas law in this case to the effect that the facts showed Harpold was not a special employee of the Kansas Company, and, therefore, contribution would not be allowed under the test set out in *Bendure v. Great Lakes Pipeline Company*, 199 Kan. 696, 433 P.2d 558 (1967). In this argument, defendant reargues the absence of any evidence to show a joint employment of Harpold by both the Missouri and Kansas Companies. In *Bendure* the court was concerned with the definition of "special employee" as used in the Kansas Workmen's Compensation Law. In this case, plaintiff does not contend Harpold was a special employee of the Kansas Company, nor does plaintiff seek to recover under the provisions of the Kansas Workmen's Compensation Law. Rather, plaintiff relies, as pointed out above, on the joint employment of Harpold by both the Missouri and Kansas Companies.

On liability for contribution for injury to joint employees, Kansas applies the same law as Missouri. In *Newman v. Bennett*, 212 Kan. 562, 512 P.2d 497 (1973) the Kansas Supreme Court was considering an employee who was jointly employed by six separate employers. In discussing the liability of the employers the court stated at 512 P.2d 497[13, 14]: "[i]n a situation of dual or multiple employment where injury occurs while the workman is performing a duty common to all employers, then it is only fair and logical that any award of compensation should be borne by all . . ."

Contribution is well recognized in Missouri, both under the Workmen's Compensation Statute, § 287.130 RSMo 1969, V.A.M.S., and as a rule of law. One of the earliest

**616**

expressions is found in *Van Petten v. Richardson*, 68 Mo. 379 (1878). The doctrine has been more recently stated in *Commercial Union Ins. Co. v. Farmers Mut. Fire Ins. Co.*, 457 S.W.2d 224, 226[3, 4] (Mo.App.1970) as follows:

"'The doctrine of contribution is not founded on contract, but is based on the principle that equality of burden as to a common right is equity, and that wherever there is a common right the burden is also common,' *Missouri District Telegraph Co. v. Southwestern Bell Telephone Co.*, 338 Mo. 692, 93 S.W.2d 19, 23[8]. The doctrine of contribution finds its basis in general principles of equity and of natural justice rather than contract. It is to be applied where one is compelled to pay more than his share of a common obligation which several persons are obligated to discharge."

The plaintiff did not cast its petition under the provisions of § 287.130, but rather pleaded a right to recover on the basis of contribution founded on the joint employment of Harpold. The defendant does not question the applicability of the general rule of contribution, but doubts only the existence of the joint employment and this issue has been resolved against it. In this circumstance, the action of the trial court in allowing contribution on the facts here presented of joint employment will be upheld.

■ Furthermore, since the law in Kansas, as stated in *Newman*, and the law in Missouri, as stated in *Commercial Union*, with respect to contribution, as applied to the facts of this case, appears to be the same, there is no reason to decide whether Kansas or Missouri law will control this case.

"[I]f the laws of both states relevant to the set of facts are the same, or would produce the same decison in the lawsuit, there is no real conflict of laws and the case ought to be decided under the law that is common to both states." Robert A. Leflar, American Conflicts Law, § 103 False Conflicts, p. 239 (1959 rev. ed. 1968). See also Restatement Second Conflicts of Law § 186, comment "c" at 560 (1969) and *Pacific States Cut Stone Company v. Goble*, 70 Wash.2d 907, 425 P.2d 631 (1967).

The judgment is supported by substantial evidence and no error of law appears and is, therefore, affirmed.

All concur.