(707 P.2d 1087)
No. 57,975

Lawrence Wade, *Appellant,* v. Union National Bank and Great American Insurance Companies, *Appellees.*

Petition for review denied December 19, 1985.

Opinion filed October 24, 1985.

*George E. McCullough*, of McCullough, Wareheim & LaBunker, of Topeka, for the appellant.

*Bryce A. Abbott*, of Sherwood & Hensley, of Wichita, for the appellees.

Before Briscoe, P.J.; Terry L. Bullock, District Judge, assigned; and Frederick Woleslagel, District Judge Retired, assigned.

Bullock, J.: Lawrence Wade works full time as a Wichita policeman. He also "moonlights" as a security guard at both St. Joseph Medical Center and Union National Bank. While working at his bank job, Wade fell on some ice and fractured his right leg. Thereafter, Wade filed a workers' compensation claim seeking recovery for this job-related injury. At the hearing on the claim before the administrative law judge only two issues were seriously disputed:

1. Whether Wade's average weekly wage (for purposes of the temporary total disability computation) was what he earned at the Bank alone or was, instead, the aggregate of his wages from all three jobs, and

2. whether Wade had suffered compensable traumatic neurosis in addition to his leg injury.

Compensating Wade only for his leg injury on the basis of his Bank wages alone, the administrative law judge decided both issues adverse to Wade. Wade timely appealed, albeit unsuc-

cessfuly, first to the director of workers' compensation and then to the district court.

On review of these decisions we are presented with only two issues:

1. Should full-time and part-time "moonlighting" wages be aggregated as the weekly wage in computing temporary total disability payments for a worker injured while working on the part-time job, and

2. Is the trial court decision denying recovery for traumatic neurosis supported by substantial competent evidence?

The scope of this court's appellate review in workers' compensation cases is well settled. Specifically, under K.S.A. 1984 Supp. 44-556(c), our review is limited to questions of law. Questions of statutory construction are questions of law and, although deference is often given to the interpretation of statutes made by the administrative agency charged with enforcement of those statutes, courts are authorized to substitute their judgment for that of the agency on questions of law. See *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 808-09, 667 P.2d 306 (1983), and cases cited therein.

In reviewing factual findings of the trial court, this court is limited to a determination of whether the trial court's judgment is supported by substantial evidence when viewed in the light most favorable to the party prevailing below. *Dieter v. Lawrence Paper Co.*, 237 Kan. 139, 145, 697 P.2d 1300 (1985); *Crabtree v. Beech Aircraft Corp.*, 229 Kan. 440, 442, 625 P.2d 453 (1981).

Substantial competent evidence has been defined as that which is relevant and which carries enough weight to allow one to conclude that the judgment is proper. *Hardman v. City of Iola*, 219 Kan. 840, 549 P.2d 1013 (1976); *Harris v. Cessna Aircraft Co.*, 9 Kan. App. 2d 334, 678 P.2d 178 (1984). If the evidence supporting a judgment is substantial and competent, the trial court ruling is upheld even if there is evidence in the record which supports contrary findings. *Phillips v. Helm's Inc.*, 201 Kan. 69, 439 P.2d 119 (1968). Negative findings of a trial court are seldom set aside if the evidence is limited in quantity and its weight and credibility questionable, or if the evidence may be disregarded for any reason. *Harris v. Cessna Aircraft Co.*, 9 Kan. App. 2d at 335. See also *Davis v. Rock Island Oil Co.*, 211 Kan. 201, 505 P.2d 694 (1973); *Harrell v. J. S. Frank Construction Co.*, 210 Kan. 548, 502 P.2d 762 (1972).

With these principles in mind, we turn to Wade's first issue on appeal. The resolution of this issue, in our view, depends entirely upon the interpretation of K.S.A. 44-511(b)(7), which provides:

"(7) The average gross weekly wage of an employee who sustains an injury by accident arising out of and in the course of multiple employment, in which such employee performs the same or a very similar type of work on a part-time basis for each of two (2) or more employers, shall be the total average gross weekly wage of such employee paid by all the employers in such multiple employment. The total average gross weekly wage of such employee shall be the total amount of the individual average gross weekly wage determinations under this section for each individual employment of such multiple employment."

No Kansas cases have interpreted this provision of the statute in its present form. However, two cases and the legislative history of the section do provide some guidance in determining the legislative intent and purpose of the provision.

The history of section 44-511 of the Workmen's Compensation Act was reviewed by our Supreme Court in *Walters v. Greenland Drilling Co.*, 184 Kan. 157, 334 P.2d 394 (1959). A brief review of that history is necessary to fully understand the purpose of the present language of K.S.A. 44-511(b)(7). In *Walters*, the high court noted that the first workers' compensation act in Kansas was modeled on the British Act which clearly provided for an award of compensation based on all concurrent contracts of employment at the time of the injury. The court further observed:

"The first Kansas workmen's compensation act was enacted as L. 1911, ch. 218, and in section 12 of that act we find the following language:

" '(b) Where the workman had entered into concurrent contracts of service with two or more employers under which he worked at one time for one such employer and at another time for another such employer, his "earnings" and his "average earnings" shall be computed as if his earnings under all such contracts were earnings in the employment of the employer for whom he was working at the time of the accident.'

"The above language remained a part of the section of our workmen's compensation act for some time. The particular section came to be numbered section 44-511 in the Revised Statutes of 1923, and has retained that designation to the present time. The only case in Kansas in which the particular clause seems to have been attempted to be applied was *Walton v. Electric Service Co.*, (1926) 121 Kan. 480, 247 Pac. 846. In the *Walton* case the workman was employed by the electric company and also by the city of Bucklin. The claimant contended the award should be based upon earnings received from both jobs. This court refused to follow claimant's contention since the city was not operating under the workmen's compensation act. . . .

"1933, the legislature amended section 44-511 by removing the provisions taken from the British act. By L. 1933 (special session), ch. 74, sec. 1, the pertinent portion of section 44-511 was amended to read:

" 'That section 44-511 of the 1931 Supplement to the Revised Statutes of the state of Kansas, 1923, being section 11 of chapter 232 of the Session Laws of Kansas, 1927, by amending to read as follows: Section 44-511, *Rules for compensation*. (1) Whenever in this act the term "wages" is used it shall be construed to mean the *money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident* . . . (Italics supplied.)" *Walters v. Greenland Drilling Co.*, 184 Kan. at 159-60.

In *Walters*, the worker was killed while performing his duties as an oil field pumper for the Greenland Drilling Company, and death benefits were computed on the basis of his annual wage from his employment with Greenland. The evidence showed that Walters was concurrently employed by two other oil companies as an oil pumper at the time of his death, and the claimants argued that compensation should have been based on the total of his earning from the three individual employments. The court affirmed the award based solely on Walters' wage from Greenland Drilling, concluding "the Kansas legislature deliberately removed from our statute and repealed the provisions for basing wages on concurrent contracts." 184 Kan. at 162. The court also stated:

"If the legislature should desire to restore a workman's right under the compensation act to recover an award based upon all his earnings from all his contracts of employment, it may easily do so by restoring to the statutes the provisions repealed by the 1933 amendment of section 44-511. Under the present history of sections 44-510 and 44-511, consideration of mere concurrent contracts must be construed to be forbidden for the purpose of arriving at a workman's annual earnings. Under the present provisions of the statute, appellants must fail in their contentions, and the orders of the district court must be affirmed." 184 Kan. at 163.

K.S.A. 44-511 was amended in 1974 (L. 1974, ch. 203, § 18) to include, *inter alia*, the present language found in K.S.A. 44-511(b)(7).

The question for our determination is, can the language of K.S.A. 44-511(b)(7) authorizing weekly wage aggregation for a worker who "performs the same or a very similar type of work *on a part-time basis* for each of two (2) or more employers" be read to include a full-time wage earner who also "moonlights" on one or more part-time jobs? We think not. Initially, we note that when the legislature, in 1911, intended aggregation of all wages in all multiple employment cases, it clearly knew how to and did

say so. After later deleting this provision entirely, the 1974 legislative body reinstated the aggregation clause, but only for those workers employed by two or more employers *"on a part-time basis."* Additionally, our independent research of the legislative history of K.S.A. 44-511(b)(7) reveals the following notation in the October 17, 1973, minutes of the committee which recommended its passage:

"[The subsection provides that] a worker who is employed by more than one employer but in similar type work be compensated to reflect his average work week and not the number of hours of just one employer. (*Specific exception was made for anyone considered moonlighting.*)" Emphasis added.

We are therefore persuaded that multiple employment wage aggregation authorized under K.S.A. 44-511(b)(7) for purposes of temporary total disability payment computation applies only to workers employed exclusively in part-time employments of a similar nature and does not apply to workers employed on a full-time basis who also "moonlight" part time. Applying this statute, thus construed, to the case at bar where Wade was employed full time for the police department and part time for the hospital and the bank (where the injury occurred), we conclude that no aggregation of wages is authorized and that the trial court correctly computed Wade's compensation based upon his bank wages alone.

We turn finally to the second issue raised on appeal. Before reviewing the record we are compelled to first observe that in claims of traumatic neurosis, it is the claimant who bears the burden of proof.

In the case at bar, although there was evidence that Wade had psychological problems as a result of his immobility and inability to work after his injury, the record is void of any suggestion that the psychological problems resulted in any compensable disability. Even Dr. Seifert, Wade's personal psychologist and only witness on this point, testified that Wade's psychological problem would not have an effect on his ability to perform the same job in the future. Furthermore, Dr. Seifert did not rate any degree of disability attributable to the alleged neurosis.

K.S.A. 44-501 provides in part:

"[T]he employer shall not be liable under the workmen's compensation act in respect of any injury which does not disable the employee for a period of at least one week from earning full wages at the work at which he or she is employed."

Our review of the record below reveals no evidence other than

the testimony of Dr. Seifert and claimant's testimony concerning his feelings about his immobility relating to the claim for traumatic neurosis. As we have previously observed, Wade had the burden of proof with respect to the neurosis claim. Simply put, he failed to sustain it. Accordingly, we conclude that the trial court's denial of recovery for traumatic neurosis is not error.

Affirmed.