272 P.2d 187

**STROUD**

v.

**INDUSTRIAL COMMISSION et al.**

No. 7687.

Supreme Court of Utah.

June 25, 1954.

Clyde, Mecham & White, Edward W. Clyde, Salt Lake City, for plaintiff.

Clinton D. Vernon, Atty. Gen., A. Pratt Kesler, Homer Holmgren, E. R. Christensen, Salt Lake City, for defendants.

McDONOUGH, Chief Justice.

Certiorari to review a denial of compensation to a policeman's widow, whose husband was killed by the accidental discharge of his own pistol, on the ground that his death was not compensable because it did not result from an accident occurring "in the course of his employment" or "arising out of his employment."

Thomas Stroud was a sergeant with the Salt Lake City police force at the time of his death, January 5, 1951. On this date, which records show as his day off, he had arranged with two other officers to check out to them, in his capacity as sergeant, a special police car. He arrived at the police station at the appointed hour, 6:00 p. m., dressed in civilian clothes, and was informed by the acting sergeant on duty that the men he was to meet would be delayed by a special assignment. While awaiting these officers, Sergeant Stroud undertook to help another officer, McGarry, transfer cases of soda pop, which Stroud was to take to a police benefit party, from McGarry's car to his own. McGarry was on duty at the time, but the record is not clear as to whether Stroud had arranged to meet McGarry at this time for the purpose of obtaining the soft drinks to take to the party or whether he volunteered for the duty at the time he met McGarry. Stroud was killed while thus engaged when his gun fell and discharged, the bullet entering Stroud's heart.

Petitioner contends that the Industrial Commission erred in concluding that the accident which caused Stroud's death did not arise out of his employment nor occur in the course of the employment. It is fundamental that the scope of review of this court is limited and it has been so often stated as to become axiomatic that this court will not disturb the findings of the Commission where there is substantial competent evidence to support them. Wherritt v. Industrial Commission, 100 Utah 68, 110 P.2d 374. The stringent test for determining when the findings of the Commission become a matter of law rather than of fact is stated in Norris v. Industrial Commission, 90 Utah 256, 61 P.2d 413, 415, to be:

"Where the matter presented on appeal is the question of whether the commission should have in law arrived at a conclusion of fact different

from that at which it did arrive from the evidence, a question of law is presented only when it is claimed that the commission could only arrive at one conclusion from the evidence, and that it found contrary to that inevitable conclusion. But in order to reverse the commission in this regard it must appear at least that (a) the evidence is uncontradicted, and (b) there is nothing in the record which is intrinsically discrediting to the uncontradicted testimony and (c) that the uncontradicted evidence is not wholly that of interested witnesses or, if the uncontradicted evidence is wholly or partly from others than interested witnesses, that the record shows no bias or prejudice on the part of such other witnesses, and (d) the uncontradicted evidence is such as to carry a measure of conviction to the reasonable mind and sustain the burden of proof, and (e) precludes any other explanation or hypothesis as being more or equally as reasonable, and (f) there is nothing in the record which would indicate that the presence of the witnesses gave the commission such an advantage over the court in aid to its conclusions that the conclusions should for that reason not be disturbed."

In this case, the record is short and the evidence simply a description of the occurrences of the evening of January 5, 1951, all of which is uncontradicted. There is nothing in the record which would indicate to us that the commission disbelieved, or had any reason to disbelieve, any of the witnesses appearing before it, unless the ambiguity of the following sentence from the decision of the commission might suggest that they did not believe that Stroud's purpose in going to the station was to check out the special car.

"If we believe that Stroud actually came to the station to check out a special car about six p. m. and, although not called to duty, he in fact had proceeded to check out the car and in so doing had been accidentally killed, we would not hesitate to award compensation."

The following sentences of the same paragraph of the decision, however, appear to dispel this doubt and indicate that the reason that an award was not given was that the commission believed either that Stroud had not entered upon his employment at the time he was killed or that he had departed therefrom in handling the cases of soft drinks.

"However, Stroud was transferring cases of pop from the McGarry car to his own, a duty in no way connected with or incident to the duty owing to his master. In fact, under no recognized legal theory could Stroud be considered in the course of his employment unless and until he embarked on the task of checking out the car. The fact that one purpose of the trip to

the station was to perform a duty clearly in the course of employment did not cancel his day off. He was off duty up to the moment of the accident. The accident occurred while performing an act in no way connected with or incidental to the duty owing to his master."

Thus, it seems that the reason for the denial of compensation was a conclusion of law that, although Stroud had a duty to perform, he was not in the course of his employment until he embarked upon that duty.

The Commission quoted from the case of Sullivan v. Industrial Commission of Utah, 79 Utah 317, 10 P.2d 924, in deciding that the fact that Stroud was subject to 24-hour call was not pertinent to whether or not he was in the course of his employment at the time of the accident.

"Though an employee is by the terms of his employment required to be ready to perform his duties for the employer at any hour of the day or night, it does not follow that every accident or injury that he may receive during the course of the twenty-four hours arises out of his employment. To be compensable, it must appear that at the time of the injury he was discharging some of the duties he is employed to perform or that what he is doing is in some way connected with or incidental to the duty owing to the master."

The court in the Sullivan case held that where an employee on a trip for his company chose to stop along the route to visit his daughter and was injured while he was escorting her to her home after an evening of entertainment, he was not in the course of his employment. To quote further from the case:

"Even if it be considered that he did not step aside from his employment in choosing to sleep in a hotel at Poughkeepsie instead of New York City, still we think it must be held that in entertaining his daughter and her friends at dinner and in taking the short journey wherein he undertook to accompany them to the college dormitory was a diversion purely personal and in no way prompted by, or beneficial to, the interest of his employer. His employer did not require that he stop at Poughkeepsie nor that he should consult with or transact any business at or about the place where the accident occurred."

Clearly, the case stands for the proposition that an employee on 24-hour call is not covered by the Workmen's Compensation Act when he deviates from the purposes of his employment, but it cannot be authority upon which to determine that Stroud, under different circumstances, had stepped outside his employment after having entered upon it by undertaking a simple task not connected with that employment. The cause of the accident was

the discharge of the gun which, as a police officer, he was authorized to carry; if the gun had discharged while he was in the station talking to the acting sergeant on duty about police matters, apparently the Commission would have granted the award. It was necessary for him to wait for the officers to whom he was to check out the car; the question therefore is whether it makes a difference that he did not spend the time in idleness but, instead, became active on a program of his own.

To hold that Stroud, during the waiting time, must do only those things which would promote his employer's business or be held to have stepped outside his employment would, in effect, overrule the accepted doctrine of the so-called "horseplay" cases, where the applicants were injured on the premises of the employers while amusing themselves during a rest period. In Twin Peaks Canning Co. v. Industrial Comm., 57 Utah 589, 196 P. 853, 858, 20 A.L.R. 872, it is said:

"A careful reading of the decided cases will, however, disclose that the mere fact that the injured employe, at the time of the accident, was not in the discharge of his usual duties or was not directly engaged in anything connected with those duties, does not necessarily prevent him from recovering compensation in case of accidental injury. In that connection it must be remembered that, while a human being may do no more than what a machine might do, yet he cannot be classed as a machine merely. If during his working hours there are intervals of leisure, he may, during such intervals, within reasonable limits, move from place to place on the premises of the employer in case he refrains from exposing himself voluntarily to known or visible hazards or dangers. In moving about as aforesaid, he may also have social intercourse with his coemployes, and within reasonable limits may 'visit' with them. In doing these things within the bounds of reason, the employe does not go outside of the course of his employment."

In the case of Colson v. Steele, 73 Idaho 348, 252 P.2d 1049, the Idaho court held that a gun accident was compensable, even though the gun had no relation to the work of surveying, but was merely used in target practice during the noon hour. Here, Stroud was authorized and required to carry his gun during his working hours; he carried it for the benefit of his employer and the employer thus was on notice that an accident of this type is an ordinary risk of a police officer. He had not abandoned his occupation and was performing the duty of waiting for the other officers.

If, therefore, the loading of the cases of pop was not such a deviation as to place Stroud outside his employment, the only other grounds upon which we could uphold the commission's decision would be that

Stroud had not yet entered upon his employment. The commission found:

"*Friday was Stroud's day off.* He was not called to duty on that day. If he came to the station to check out a car, it was on his own initiative. Obviously, he also came to the station to assist in carrying out the refreshment assignment he and officer McGarry had accepted. It is said that only a sergeant could check out the special car but acting sergeant Brinton also had such authority and in fact did check out the car after Stroud's death."

 As a sergeant, Stroud had the power and authority to made decisions and give orders as to which officers would take certain assignments. The fact that he assigned to himself the duty of checking out the car, regardless of whether or not he was the only one with sufficient rank to do it, makes the assignment no less the call of the employer. If the accident had occurred on the way to the station, there would be reason for considering the duality of the purpose for which the trip was taken, but here, Stroud had already entered upon the duty and was performing that duty by awaiting the arrival of the other officers. The accident both "arose out of" and "in the course of" his employment.

The order of the Industrial Commission denying compensation is annulled. Costs to plaintiff.

CROCKETT and WADE, JJ., concur.

HENRIOD, J., dissents.

WORTHEN, J., does not participate herein.