391 P.2d 302

**Betty ASKREN, Plaintiff,**

**v.**

**The INDUSTRIAL COMMISSION of Utah, Sperry Rand Corporation, and Liberty Mutual Insurance Company, Defendants.**

**No. 9969.**

Supreme Court of Utah.

April 15, 1964.

Kipp & Charlier, Salt Lake City, for plaintiff.

A. Pratt Kesler, Atty. Gen., Skeen, Worsley, Snow & Christensen, Salt Lake City, for defendants.

CROCKETT, Justice:

Betty Askren seeks reversal of an order of the Industrial Commission denying her workmen's compensation for an injury to her back resulting from a fall in the cafeteria maintained on company premises. This proceeding challenges the ruling of the Commission that the injury did not: "arise out of or in the course of" her employment.[1]

Plaintiff was employed by Sperry Rand's Engineering laboratory at Clearfield Naval Base. In the building where she worked, Clark, Inc. operated a cafeteria under contract with Sperry. By it Sperry agreed: to furnish without charge the space for the cafeteria; the capital equipment; the china and glassware, all of the utilities; and to remove and dispose of waste materials and to be responsible for cleaning, mopping and waxing the area. It also stated that prices should be charged as agreed between them: and that Sperry would reimburse Clark for any operating loss. It is thus plain that Sperry had a substantial degree of control over and responsibility for the operation of the cafeteria, so that Clark was in effect operating it for Sperry. However, the employees were not required to eat there, but were privileged to do so if they so desired, which about one-third of the 600 employees did. Others went home or into nearby towns,

---

1. This is the test of coverage. See Sec. 35–1–45, U.C.A.1953.

or ate in the Naval cafeteria some distance away.

■ We are in agreement with the argument advanced that where an employee upon his own time is engaged in some activity or using some facility made available by the employer gratuitously for the comfort, convenience, or recreation of employees, and which is of no particular advantage or benefit to the employer in carrying on his business, an injury suffered in connection therewith should not be considered as arising out of the employment. This is so, not only because it would not fall within the terms of the statute, but it would also be unfair to the employer to place a burden upon him for providing benefits for his employees; and such a policy would have the undesirable effect of tending to discourage employers from furnishing benefactions to them.

■■ On the other hand, in order for an employee to be covered by workmen's compensation, it is not necessary that he be doing the particular task which constitutes his main duties, but there are many employment-related activities which employees are expected to participate in and in which they are covered.[2] The essential thing is that there be some substantial relationship between the activity engaged in and the carrying on of the employer's business. That is, it should be of such a nature that it may reasonably be assumed that it would be of some benefit or advantage to the employer in the operation of his business or the advancement of his interests.

■ This court has repeatedly affirmed that the Workmen's Compensation Act should be liberally applied in favor of coverage of the employee. This doctrine is illustrated in the recent case of Wilson v. Sears, Roebuck & Co.,[3] which is closely related in principle to the instant one. The employee, during her lunch period, was taking advantage of the privilege accorded employees of buying at a discount, and was obtaining delivery of some merchandise when she was injured. The court rejected her suit against the company for personal injuries. It reasoned that the employee was participating in an activity encouraged by the employer on company premises which was an advantage to the employer, viz.: "[s]uch benefits are considered to be helpful in employer-employee relations, and most of the decided cases hold that the servant has the protection of compensation acts if injured while attempting to take advantage of such privileges during the lunch hour and while on the employer's premises."[4]

2. See Stroud v. Industrial Commission, 2 Utah 2d 270, 272 P.2d 187 (1959).
3. 14 Utah 2d 360, 384 P.2d 400 (1963).

4. Ibid., Page 361 Utah Reports, page 401 of 384 P.2d.

In a case whose facts very closely resemble the instant one, National Surety Corp. v. Bellah,[5] the court pointed out that the fact that the employee was not on company time was not decisive. It observed that there was a short lunch period, thirty minutes, and that due to the relative remoteness of other eating facilities there was a benefit both to the employer and the employee for plaintiff to use the cafeteria and stressed the fact that she was doing something incidental to and connected with the work as intended by the employer and, consequently, she was covered.[6]

The instant situation is very similar. The lunch period was forty-two minutes. As there were several hundred employees who had to eat during that time, it is obvious that the cafeteria offered some advantages both to employer and employees. That this is so is strongly indicated by the arrangements made by the company in establishing the cafeteria and the substantial burdens it bears in maintaining it.

Inasmuch as the plaintiff was engaged in an activity which appears to have been planned as an integral part of her employer's business and the doing of which was an advantage to the employer in carrying it on, plaintiff should be deemed covered by workmen's compensation and the appropriate award made for her injury. It is so ordered.

McDONOUGH, CALLISTER and WADE, JJ., concur.

HENRIOD, Chief Justice (dissenting): Respectfully I dissent.

First: We don't upset the Commission's orders unless unsupported by competent, substantial evidence, as has been voiced by this court and the author of the main opinion more than once.[1] Stated otherwise, the order of the Commission will be sustained, unless it is shown to be arbitrary and/or capricious, to which the author also has subscribed.[2] Also, we review the evidence

---

5. 245 F.2d 936, C.C.A.5th (1957).
6. See M. & K. Corp. v. Industrial Comm., 112 Utah 488, 189 P.2d 132 (1948). That injuries to employees occurring in eating facilities on the employer's premises during a lunch hour are generally covered by workmen's compensation, see 1 Larson's Workmen's Compensation Law, Sec. 21.21(a).

1. Maryland Cas. Co. v. Ind. Comm., 12 Utah 2d 223, 364 P.2d 1020 (1961); Sutton v. Ind. Comm., 9 Utah 2d 339, 344 P.2d 538 (1959); Stroud v. Ind.

Comm., 2 Utah 2d 270, 272 P.2d 187 (1954); Crow v. Ind. Comm., 104 Utah 333, 140 P.2d 321, 148 A.L.R. 316 (1943).
2. Pintar v. Ind. Comm., 14 Utah 2d 276, 382 P.2d 414 (1963); Sizemore v. Ind. Comm., 4 Utah 2d 126, 288 P.2d 788 (1955); Maryland Cas. v. Ind. Comm., supra; Sutton v. Ind. Comm., 9 Utah 2d 339, 344 P.2d 538 (1959); Jones v. California Pkg. Co., 121 Utah 612, 244 P. 2d 640 (1952); Long v. Western States Ref., 14 Utah 2d 398, 384 P.2d 1015 (1963).

in a light more favorable to the Commission's conclusion, also endorsed by the author.[3]

So: What is the evidence here, that looked upon more favorably in support of the Commission's order, justifies it?

The employees were not required to eat at the cafeteria which, though operated on the premises, had been leased to an entrepreneur, hardly a part of the employer's industrial plant. Only ⅓ of the employees took · advantage of the facility, without employer or economic compulsion.[4] Other facilities were available off the premises to which the other ⅔ did or could have resorted. At noon the employees officially checked out, and checked in after lunch. During the lunch sojourn they were free as the birds. Others than employees could eat at the cafeteria on occasion. No Berlin Wall kept anyone in or out of the cafeteria. The lease agreement obviously contemplated the services of an independent contractor, with rather minor leasehold restrictions. Assuming that the employer had a conditional control over the lessee, this does not point up any control over the employees,—and herein lies a differential. If the cafe operator had an injury claim based on control of his employer, Sperry, which I think would assume the ridiculous, that is one thing, but to attribute a control over him to Sperry's employees, none of whom had to enter or even look at the cafeteria at any time by any sort of necessity connected with his job, amounts to a controlled control akin to hearsay upon hearsay.

The circumlocution of the main opinion's treatment of the evidence most favorable to the applicant to the exclusion of that most favorable to the Commission's order, is an evasion of the perhaps trite generalizations reflected in the cases cited in the footnotes of this dissent, and presents a situation where this court by a sort of jurisprudential paralysis, talks out of one side of its mouth in January, but by convenient therapy shifts the infirmity to the other side in February.

3. Nicholson v. Ind. Comm., 15 Utah 2d 176, 389 P.2d 730 (1964); Jones v. California Pkg., supra; Long v. Western States Ref., supra; Sutton v. Ind. Comm., supra.

4. Nat. Surety Corp. v. Bellah, 5 Cir., 245 F.2d 936 (1957), cited and heavily relied upon in the main opinion. A casual reading thereof will reflect that the case is inapropos here, because it indicates that the short 30 minutes lunch hour, coupled with inappropriate facilities outside the plant, made it impossible to eat anywhere save on the company's property, which economic factor *forced* the employees to patronize the company-sponsored cafe, bring their own lunch or starve at high noon. Furthermore, that case was a federal intermediate court to which this court ascribes proper respect but no authority compulsive in our conclusions.

As to Wilson v. Sears, Roebuck & Co.,[5] cited in the main opinion: It is no authority here, since this court had no authority to express its opinion as to whether facts presented in a civil suit in the district court were or were not such as to establish the fact of the nature or extent of employment, under our Workmen's Compensation Act. That question is reserved to the Industrial Commission under statutory interdiction,[6] and is no subject for the courts to resolve in the first instance. If this is not so, this writer can contend,—successfully, I think,—that in the future, applicants for compensation under the Workmen's Compensation Act, need not go through statutory channels, but may short-stop the legislative interdiction by simple resort to the courts for determination of fact situations that until the Sears case were confined to an orderly procedure through the Industrial Commission. Hence, we should admit our mistake in the Sears case and get back on the procedural track, lest the legislative locomotive be derailed. Saying this, I concede my own error in going along with the Sears decision, with only the excuse that in that case, none of the litigants raised the jurisdictional point. This, of course, is no justification for our error.

5. 14 Utah 2d 360, 384 P.2d 400 (1963).

6. 35-1-85, U.C.A.1953 and annotations, thereunder.