**Dr. Marco A. LONA and Mary Ann Hoff, Appellants (Defendants Below),**

v.

**Hilda SOSA, Appellee (Plaintiff Below).**

No. 2–880A276.

Court of Appeals of Indiana, Fourth District.

May 14, 1981.

Rehearing Denied June 24, 1981.

Samuel J. Furlin, Spangler Jennings Spangler & Dougherty, P.C., Merrillville, for appellants.

W. Henry Walker, Sr., W. Henry Walker & Associates Professional Corp. Inc., East Chicago, for appellee.

YOUNG, Presiding Judge.

Dr. Marco A. Lona and Mary Ann Hoff[1] appeal the decision of the Full Industrial Board awarding benefits to Hilda Sosa for the death of her husband Thomas Sosa, an employee of Dr. Marco Lona. Lona argues that because there is insufficient evidence to establish that the death of Thomas Sosa arose out of and in the course of his employment, the Board's award is contrary to law.[2] Having determined there is no evidence from which a reasonable inference can be drawn that the death of Sosa occurred in the course of his employment, we reverse the award.

The evidence, construed in favor of the Board's findings, discloses that Thomas Sosa was hired by Dr. Lona, owner of "Thee Place," a tavern in East Chicago, Indiana, in early November, 1975 as janitor, stocker and occasional bartender. Sosa's duties began about 7:00–8:00 a. m. each morning when he would clean the tavern and open it for business. Although he usually finished work about 5:00 p. m., his hours were irregular and he would occasionally be called in to work other times by Manuel Avitia, manager of the tavern. On November 18, 1975, Sosa worked his regular daytime hours and then, at 11:00 p. m., was asked by Manager Avitia to tend bar and look after the tavern while Avitia stepped out. Sosa worked tending bar until sometime after 2:00 a .m. when Avitia returned. Upon his return, Avitia relieved Sosa of his bartending duties and began to close up the tavern. Sosa sat down in a booth and began or continued his drinking. Testimony of several customers established that Sosa was very inebriated. Avitia counted and recorded the receipts of the day, talked to customers, cleaned up the tavern, and finally about 5:00–5:30 a. m. cleared the tavern of all customers but Sosa and Pete Acevez. A discussion or argument occurred between Sosa and Avitia. Avitia was overheard by the remaining customer, Acevez, to say something about "five dollars short." Sometime thereafter, Sosa was shot and killed by Avitia.

Based upon the above evidence, the Board found the following facts and made the following findings and award:

## SUMMARY OF THE FACTS

Thomas A. Sosa, plaintiff's decedent, earned thirty-five ($35.00) dollars per week at the time of his death on the 19th of November, 1975, from his employment at Thee Place, then and there being under the ownership of Dr. Marco A. Lona. That in the late evening of November 18, 1975, and the early morning of November 19, 1975, Thomas A. Sosa was assigned by Manuel Avitia to tend bar at Thee Place under his authority as manager, starting at 11:00 P.M., while he left for other places; that Manuel Avitia returned to Thee Place sometime after 2:00 A.M., the exact time unknown, and Thomas A. Sosa was still pursuing the assignment given him by manager Avitia; tending bar, a

---

1. It was stipulated at the hearing and it is again stipulated on appeal that Mary Ann Hoff was not the employer of Thomas Sosa and was not a proper party to this action.

2. Lona also alleges several other errors which, because of our disposition of this first issue, we do not address.

necessary course in the trade and business of the employer.

That Thomas A. Sosa had regular duties on said date at Thee Place—to clean up and arrange the facility in an orderly fashion after closing and before reopening at 11:00 A.M., each business day, and that he had no regularly assigned time to perform this function; that the time of such function was left to him.

That sometime after manager Avitia's return and finding decedent still on the premises, he, Avitia, began a check of the amount of income for the period of time he left the business in the hands of decedent, and believing the funds to be short of the principal's money collected by him, the decedent, Avitia shot and killed the decedent on the premises.

That at the time of the killing, Thomas A. Sosa was at the place of his employment pursuant to his assigned employment at that time as bartender and/or as porter and clean-up person; that under such circumstances, he was killed by a fellow employee who had supervisory authority from the master over the decedent.

That no partial payment of any kind has been paid to the dependents herein named as compensation, nor as medical or funeral reimbursement.

That on the date of his death, November 19, 1975, Thomas A. Sosa left surviving him as his legal dependents, his wife, Hilda, and his minor son, Manuel, born on the 9th day of April, 1964.

Plaintiff's Ex. 1 in four pages, as well as the marriage certificate of Thomas A. Sosa and Hilda Andrade, and the certificate of birth of Manuel Sosa were submitted and admitted into evidence. Defendant's Exhibits A through D were submitted and admitted into evidence. The defendant filed and published the depositions of Manuel S. Avitia and Hilda Sosa.

## FINDINGS

Said hearing member having heard all of the evidence in said cause, having reviewed the entire record, and being duly advised in the premises therein, now finds:

That on the 19th day of November, 1975, one Thomas S. (sic.) Sosa, plaintiff's decedent, was in the employ of the defendant at an average weekly wage of $35.00; that on said date said decedent came to his death by reason of an accident arising out of and in the course of his employment by said defendant; that defendant had knowledge of said accidental injury and death but did not furnish medical attention or burial expense for said decedent.

That at the time of his death decedent left surviving him his wife, Hilda, and his minor son, Manuel, born September 4, 1964, with whom he was living and both of whom were totally dependent upon him for their maintenance and support. The hearing member now finds for the plaintiff and against the defendant on plaintiff's Form 10 application for the adjustment of claim for compensation, filed on October 15, 1976.

## AWARD

IT IS THEREFORE CONSIDERED, ORDERED, AND ADJUDGED by the Industrial Board of Indiana that plaintiffs have and recover from defendant compensation, in equal shares, at the rate of $50.00 per week, beginning the 19th day of November, 1975, for a specific period of 500 weeks, not to exceed the total sum of $25,000.00.

\* \* \* \* \* \*

██ Dr. Lona contends that the Board's award is contrary to law because the facts found by the Board in support of its finding that Sosa's death arose out of and in the course of his employment are not supported by sufficient evidence. An elementary principle of appellate review of administrative decisions is that the appellate court will not weigh the evidence, judge the credibility of witnesses or substitute its judgment of the factual record for that of the Industrial Board. *Goldstone v.*

Kozma, (1971) 149 Ind.App. 626, 274 N.E.2d 304. Whether an injury arises out of and in the course of employment is a question of fact to be determined by the Industrial Board. *Burger Chef Systems, Inc. v. Wilson*, (1970) 147 Ind.App. 556, 262 N.E.2d 660. The burden of proving that the injury arises out of and in the course of employment, however, rests on the claimant. *B.P.O. Elks # 209 v. Sponholtz*, (1969) 144 Ind.App. 150, 244 N.E.2d 923. Mrs. Sosa was, therefore, required to establish by evidence of probative value, free from conjecture, surmise or mere guess, that Sosa's death occurred in the course of employment. Because the evidence presented upon which the Industrial Board made its factual finding wholly fails either directly or inferentially to show that Sosa's injury occurred in the course of his employment, the Board's finding and its award do not rest upon a rational basis. *Marshall v. Tribune-Star Publishing Co.*, (1969) 251 Ind. 557, 243 N.E.2d 761.

 An injury arises in the course of employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while he is fulfilling his duties or engaged in doing something incidental thereto. *Moore v. L. O. Gates Chevrolet, Inc.*, (1967) 140 Ind.App. 672, 225 N.E.2d 854. Thus, the requirement tests work-connection as to time, place, and activity; it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment. 1 Larson's, Workmen's Compensation Law § 14 (1978). An activity is related to the employment if it carries out the employer's purposes or advances his interests directly or indirectly. Under the trend of decisions, even if the activity cannot be said to advance the employer's interests, it may still be in the course of employment if, in view of the nature of the employment environment, the characteristics of human nature, and the customs or practices of the particular employment, the activity is in fact an inherent part of the conditions of that employment. 1A Larson, *supra*, § 20,

see, e. g. *Noble v. Zimmerman*, (1957) 237 Ind. 556, 146 N.E.2d 828; *Goldstone v. Kozma*, (1971) 149 Ind.App. 626, 274 N.E.2d 304.

 In its summary of facts, the Industrial Board stated that, at the time of the killing, Sosa was at the tavern pursuant to his assigned employment at that time as bartender and/or as porter and clean-up person. There is, however, no evidence to support the Board's factual finding. The uncontradicted testimony establishes that sometime after 2:00 a. m., Sosa was relieved of his bartending duties by Avitia. Thereafter, although he remained at the tavern, he performed no duties for the tavern but sat and drank as a customer. The shooting occurred about 5:00–5:30 a. m., at least 2½ hours after Sosa's bartending duties ended. While the course of employment embraces a reasonable interval before and after working hours if the employee is on the premises engaged in preparatory or incidental activities reasonably related to his work, *Goldstone v. Kozma*, (1971) 149 Ind.App. 626, 274 N.E.2d 304, what constitutes a reasonable interval depends on the length of time involved, the circumstances occasioning the interval, and the nature of the employee's activity. 2 Larson's, Workmen's Compensation Law § 21.60. Here there was no work-related reason for Sosa to remain on his employer's premises for two and one-half (2½) hours after he finished his work; the only reasonable inference to be drawn from the evidence is that he remained for his own personal reasons.

 Neither is there any evidence or reasonable inference to be drawn therefrom to establish that Sosa remained at the tavern pursuant to his porter and clean-up duties. The uncontradicted testimony established that Sosa's clean-up duties began at 7:00 or 8:00 a. m. when he would meet Dr. Lona's secretary who had the key to let Sosa into the tavern. Everyone who testified on this issue, Mrs. Sosa, Manuel Avitia, Dr. Lona, Dr. Lona's secretary, stated that Sosa's daily starting time, his regularly assigned work hours, began in the morning about 8:00 a. m. Although he had a regular

schedule for his clean-up duties, he had no regular work schedule for his other duties such as bartending etc., but worked when he was needed. Even as to these other duties, however, Sosa worked when he was requested to work, not when he chose to work. Thus, there is no evidence to support the Industrial Board's finding that Sosa had no regularly assigned time to perform his clean-up duties and that the time to perform those duties was left to him.

Moreover, there is no evidence to support a reasonable inference that Sosa remained at the tavern after his bartending duties ended to begin his clean-up duties. There is no evidence that Sosa ever worked at closing time [3] nor is it reasonable to infer that he was working or intending to work when the shooting occurred.[4] In short, there is no evidence rendering reasonable a finding of continuity of employment activity by Sosa.

In summary, the evidence wholly fails to show, either directly or inferentially, that Sosa was shot while he was engaged in any act, duty or performance incidental to his employment at a time when he might reasonably have been expected to be engaged in his work. *B.P.O. Elks # 209 v. Sponholtz*, (1969) 144 Ind.App. 150, 244 N.E.2d 923. The evidence prohibits the drawing of any reasonable inference that Sosa's death arose in the course of his employment. Therefore, the award made by the Industrial Board is contrary to law. *Prudential Life Insurance Co. v. Spears*, (1954) 125 Ind.App. 21, 118 N.E.2d 813.

Reversed.

CHIPMAN and MILLER, JJ., concur.

3. Appellant, in her brief, cites to page 75 of the transcript in support of her statement that Sosa often worked closing time. However, we find only the following conversation between Mrs. Sosa and counsel:

> Q. ... do you have knowledge as to whether or not Thomas worked at anytime during the period that he worked for Thee Place during the time of the closing of Thee Place?

This line of questioning is then dropped and what knowledge Mrs. Sosa had regarding whether or not her husband ever worked closing time is not explored or revealed.

4. Indeed, several witnesses testified without contradiction that Sosa was very drunk, too drunk to have performed any employment duties at all.