Jacqui C. **WALLS**, Petitioner,

v.

The **INDUSTRIAL COMMISSION OF UTAH; Uninsured Employers' Fund; and Uncle Barts**, Respondents.

No. 920499–CA.

Court of Appeals of Utah.

July 29, 1993.

Robert Breeze, Salt Lake City, for petitioner.

Benjamin A. Sims and Thomas C. Sturdy, Salt Lake City, for respondents.

Before JACKSON, ORME and RUSSON, JJ.

RUSSON, Associate Presiding Judge:

Jacqui C. Walls appeals a final order of the Industrial Commission of Utah denying her workers' compensation benefits under

Utah Code Ann. § 35–1–45 (1988). We affirm.

## FACTS

On December 29, 1989, Walls was employed as a bartender at Uncle Barts, an Ogden bar. Following her daytime shift, which ended at 5:00, she remained at the bar to socialize, shoot pool and drink beer. Sometime between 10:30 p.m. and 11:00 p.m., approximately six hours after her shift had ended, Walls became aware that a keg of beer was empty. Without being asked to do so, Walls went into the back room to prepare another keg to be tapped. As she opened the door to the refrigerator where the kegs were stored, a keg slid out and crushed her foot.

Seeking compensation for her sustained injuries, Walls filed an application for a hearing before an administrative law judge (ALJ) of the Industrial Commission of Utah on March 27, 1990. Following the hearing, the ALJ denied Walls's claim, holding that her injury did not "arise out of and in the course of" her employment, as to meet the requirements of Utah Code Ann. § 35–1–45 (1988). Walls thereafter filed a request for review by the Industrial Commission, which request was denied.

The sole issue presented for review is whether the Industrial Commission properly denied Walls workers' compensation benefits pursuant to Utah Code Ann. § 35–1–45 (1988).

## STANDARD OF REVIEW

The Utah Administrative Procedures Act (UAPA) applies to all proceedings commenced on or after January 1, 1988. Utah Code Ann. § 63–46b–22(2) (1989). Thus, we review Walls's appeal under post-UAPA law.

Utah Code Ann. § 63–46b–16(4) (1989) provides:

The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:

. . . . .

(d) the agency has erroneously interpreted or applied the law. . . .

As to the application of this section, we have stated:

With the adoption of UAPA, deference to an agency's statutory construction should be given only "when there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language." *Morton Int'l v. Auditing Div. of the Utah State Tax Comm'n*, 814 P.2d 581, 589 (Utah 1991). Where there exists a grant of discretion, "we will not disturb the Board's application of its factual findings to the law unless its determination exceeds the bounds of reasonableness and rationality." *Pro–Benefit Staffing v. Board of Review*, 775 P.2d 439, 442 (Utah App.1989). "[A]bsent a grant of discretion, a correction-of-error standard is used in reviewing an agency's interpretation or application of a statutory term." *Morton*, 814 P.2d at 588. . . .

*Cross v. Industrial Comm'n*, 824 P.2d 1202, 1204 (Utah App.1992); *accord Uintah Oil Ass'n v. County Bd. of Equalization*, 853 P.2d 894, 894–96 (Utah 1993); *Horton v. Utah State Retirement Bd.*, 842 P.2d 928, 931 (Utah App.1992); *Mor–Flo Indus., Inc. v. Industrial Comm'n*, 817 P.2d 328, 330 (Utah App.1991), *cert. denied*, 843 P.2d 516 (Utah 1992).

The relevant portion of the statute at issue here, Utah Code Ann. § 35–1–45 (1988), reads:

Each employee ... who is injured ... by accident arising out of and in the course of his employment, wherever such injury occurred, ... shall be paid compensation for loss sustained on account of the injury ... and such amount for medical, nurse, and hospital services and medicines ... as provided in this chapter.

■ We have previously held that section 35–1–45 (1988) does not expressly or impliedly grant the Commission discretion

to interpret or apply the language of that section. *Cross*, 824 P.2d at 1204; *accord King v. Industrial Comm'n*, 850 P.2d 1281, 1292 (Utah App.1993). Accordingly, we review the ALJ's interpretation of "arising out of and in the course of" under Utah Code Ann. § 63–46b–16(4)(d) (1989) for correctness. *See King*, 850 P.2d at 1292; *Cross*, 824 P.2d at 1204.

## ANALYSIS

 In order to qualify for workers' compensation benefits under Utah Code Ann. § 35–1–45 (1988), Walls has the burden of establishing: (1) that the subject injury occurred "in the course of" her employment, and (2) that the injury "arose out of" such employment. *See Martinson v. W–M Ins. Agency, Inc.*, 606 P.2d 256, 258 (Utah 1980). Moreover, Walls must prove both of these requirements by a preponderance of the evidence. *Lipman v. Industrial Comm'n*, 592 P.2d 616, 618 (Utah 1979). Under the facts of this case, we hold that Walls failed to establish that her injury occurred within the course of her employment.[1]

In *M & K Corp. v. Industrial Comm'n*, 112 Utah 488, 189 P.2d 132 (Utah 1948), the Utah Supreme Court held that the words, "in the course of," refer to the time, place and circumstances under which an injury occurred. *Id.* 189 P.2d at 134. The court stated:

> [T]he requirement that the accident arise in the course of the employment is satisfied if it occurs while the employee is rendering service to his employer which he was hired to do or doing something incidental thereto, at the time when and the place where he was authorized to render such service.

*Id.; accord* 82 Am.Jur.2d, *Workers' Compensation* § 266 (1992); *Maher v. Workers' Compensation Appeals Bd.*, 33 Cal.3d 729, 661 P.2d 1058, 1060, 190 Cal.Rptr. 904, 906 (1983); *Martin v. Kralis Poultry Co., Inc.*, 12 Ill.App.3d 453, 297 N.E.2d 610, 616 (1973); *Indiana & Mich. Elec. Co. v. Mor-*

gan, 494 N.E.2d 991, 994 (Ind.App.1986); *Newman v. Bennett*, 212 Kan. 562, 512 P.2d 497, 501 (1973); *Lisonbee v. Chicago Mill & Lumber Co.*, 278 So.2d 5, 7 (La. 1973); *Wiley Mfg. Co. v. Wilson*, 280 Md. 200, 373 A.2d 613, 616 (Md.1977); *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E.2d 529, 531 (1977); *Graybeal v. Board of Supervisors*, 216 Va. 77, 216 S.E.2d 52, 54 (Va.1975).

 Thus, an injury occurs "in the course of" employment when it takes place (1) *within the period of employment,* (2) at a place where the employee reasonably may be in the performance of her duties, and (3) *while she is fulfilling those duties or engaged in doing something incidental thereto.* 82 Am.Jur.2d, *Workers' Compensation* § 266 (1992); *see also* 1 Arthur Larson, *Workmen's Compensation Law* § 14.00 (1993) ("The course of employment requirement ... demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment."); *Blade v. Mervis*, 226 So.2d 552, 555 (La. App.) (requirement that injury occur within the course of employment means that it must occur during the hours of employment, which include a reasonable time before or after work, and not at any other time), *cert. denied*, 254 La. 1100, 229 So.2d 113 (La.1969); *Reis v. Douglas County Hosp.*, 193 Neb. 542, 227 N.W.2d 879, 885 (1975) (for purposes of workers' compensation, employee must establish a temporal nexus to the employment); *Graybeal*, 216 S.E.2d at 54 (requirement that injury occur in the course of employment must be satisfied by showing an unbroken course beginning with work and ending with injury under circumstances that the beginning and end are connected parts of a single work-related incident). Moreover, all three criteria of time, place and circumstances must be fulfilled in order for a claimant to recover workers' compensation benefits.

---

1. Since Walls must satisfy both prongs of the test under section 35–1–45 to establish compensability, *see Martinson*, 606 P.2d at 258, we limit the scope of our opinion to the question of whether the injury occurred within the course of her employment.

*Brown v. Jim Brown's Serv. Station,* 45 N.C.App. 255, 262 S.E.2d 700, 702 (1980).

Because there are no cases in Utah "on all fours" with the case at bar, we look to courts in other jurisdictions that have addressed this particular question. Those courts have consistently held that employees who remain on the work premises following their employment for their own social purposes are not entitled to workers' compensation benefits. *See, e.g., Lemmon v. Industrial Comm'n,* 154 Ariz. 63, 740 P.2d 484, 486–87 (Ariz.App.1986); *American Legion Post No. 30 v. Gailey,* 498 So.2d 1321, 1323 (Fla.App.1986), *review denied,* 508 So.2d 13 (Fla.1987); *Lona v. Sosa,* 420 N.E.2d 890, 894–95 (Ind.App. 1981); *Blade,* 226 So.2d at 556–57; *Emmel v. State Compensation Director,* 150 W.Va. 277, 145 S.E.2d 29, 33–34 (1965).

*American Legion Post No. 30 v. Gailey* is representative of these cases and particularly applicable to the case at bar. In that case, an off-duty bartender remained at his place of employment following his shift to drink and socialize. A fight broke out between customers at the bar, and Gailey intervened to "further the business reputation and interests of his employer." *American Legion Post No. 30,* 498 So.2d at 1322. The hearing officer awarded him workers' compensation benefits, but the Florida Court of Appeals reversed, holding that "when the employee for a substantial amount of time before leaving is engaged in an unmistakably personal pursuit, such as ... drinking, the interlude is not within the course of employment." *Id.* at 1322–23 (quoting 1A Arthur Larson, *Workmen's Compensation Law* § 26.10 (1985)). Thus, the court of appeals reasoned that, notwithstanding the fact that Gailey intervened in the fight for the benefit of his employer, at the time of the injury, Gailey had concluded the course of his employment and was drinking as a paying customer for personal reasons, and therefore denied coverage. *Id.* at 1323.

The West Virginia Supreme Court of Appeals's decision in *Emmel v. State Compensation Director* is also instructive. In that case, a brewery employee who remained at work after hours to drink and socialize was held not to be in the course of his employment. The court stated: "[W]here an employee voluntarily remains on the premises of his employer after his shift of employment has terminated, an injury received during that time will not warrant a finding that it occurred in the course of or resulting from his employment." *Emmel,* 145 S.E.2d at 32 (citation omitted).

Applying the foregoing law to the facts of this case, it is clear that Walls was not "in the course of" her employment at the time of and under the circumstances present here. First, we cannot ignore the undisputed evidence that Walls's shift had ended some five to six hours prior to the incident in question. *See, e.g., American Legion Post No. 30,* 498 So.2d at 1323 (employee determined not to be in the course of his employment when injury occurred two and one half hours after his shift ended); *Lona,* 420 N.E.2d at 894–95 (Ind.App.1981) (injury to employee who remained at his place of employment for two and one half hours after his shift ended not compensable); *Blade,* 226 So.2d at 556 (injury not covered due to three hour lapse between work and injury); *Emmel,* 145 S.E.2d at 32–34 (injury that occurred two hours after end of work day not in the course of employment and therefore not compensable). Furthermore, not only had Walls's shift at the bar ended five to six hours earlier, but by her own admission, she remained at the bar "for the purpose of socializing and playing pool." Second, at the time of the accident and under the circumstances as they then existed, Walls was without authority to render the service that resulted in her injury. The testimony of Ryan Thomas, which the ALJ found credible, indicates that no one with any authority at the bar requested Walls's assistance in readying the beer keg. Thus, the facts of this case demonstrate that, under the circumstances as they existed at the time of the accident, Walls was merely a patron at the bar at the time the accident occurred. Accordingly, based on the foregoing, the ALJ was justified in determining

that Walls had not met her burden of proving that her injury occurred within the course of her employment. *See J & W Janitorial Co. v. Industrial Comm'n,* 661 P.2d 949, 950–51 (Utah 1983); *Martinson,* 606 P.2d at 258–59.

■ Additionally, Utah cases involving employment related recreational activities are beneficial to our analysis of the case at bar. *See, e.g., Black v. McDonald's of Layton,* 733 P.2d 154 (Utah 1987) (per curiam). Employment related recreational activities are reviewed for compensability under four factors: (1) time and place; (2) degree of employer initiative, promotion, and sponsorship; (3) financial support and equipment furnished by the employer; and (4) employer benefit. *Id.* at 156–57. Whether the activity in question is covered turns on the facts of each case. *Id.* at 157.

■ As to the first *Black* factor in the case at bar, although Walls was drinking and socializing on her employer's premises, it is uncontroverted that such activity took place following the conclusion of her work day. As to the second factor, there was no evidence that Walls's employer promoted or in any way encouraged employees to remain after work to drink and socialize on the premises. The recreation was not a direct part of the employment nor contemplated by it. Thirdly, it is clear from the record that Walls's activities were engaged in without financial support from her employer. Lastly, Walls's employer derived nothing more than a small pecuniary benefit from Walls's presence at the bar, in that she was a paying customer at that time under the circumstances present in this case. Accordingly, we hold that Walls's presence at the bar at the time of the injury, under circumstances that were strictly for her personal purposes of drinking and socializing, lacked a sufficient nexus with her employment to be said to be within the course of such employment.

*See id.* at 158; *Auerbach Co. v. Industrial Comm'n,* 113 Utah 347, 195 P.2d 245, 246 (1948).[2]

Nonetheless, the dissent argues that we should narrow our analysis to focus on the point at which Walls opened the refrigerator where the kegs were stored and therefore conclude that Walls's injury occurred in the course of her employment. Such constricted construction is contrary to prior Utah Supreme Court decisions. That court, in addressing the combination of social activities with employment, has previously stated: "[I]f the predominant motivation and purpose of the activity is in serving the social aspect, or other personal diversion of the employee, even though there may be some transaction of business or performance of duty merely incidental or adjunctive thereto, the person should not be deemed to be in the course of his employment; and where there is uncertainty as to the just-stated proposition[ ], that should be resolved by the Commission as the trier of the facts." *Martinson,* 606 P.2d at 258.

In the present case, Walls's own testimony, as well as the rest of the record, clearly reflects that her predominant reason for being at the bar at the time of the accident was her own drinking and socializing. Accordingly, even if at the very moment of injury she was acting to promote her employer's best interest, such action was merely incidental to her presence at the bar, and she should not be deemed to be within the course of her employment. *See id.* (where predominant motivation of an activity is serving the social aspect, employee should not be deemed to be in the course of employment); *Black,* 733 P.2d at 158 (compensability reviewed based on employee's presence at recreational activity, not based on her status at time of injury). This is especially true in light of the fact that she had not been directed by her employer, or anyone else, to prepare the keg.

---

2. Likewise, it is important to note that this case does not fit within the "emergency" exception to non-compensability of injuries incurred outside of the course of employment. That doctrine holds that an employee may be entitled to compensation for an injury sustained while doing an act outside of the course of her employment if such act was done for her employer's benefit due to an emergency. *See generally* 1A Arthur Larson, *Workmen's Compensation Law* § 28.10 (1993).

*See Martinson,* 606 P.2d at 258. Furthermore, the dissent's argument eludes the simple, yet pivotal inquiry in this case of whether, under the circumstances of this case, at the time of the accident Walls was rendering service to her employer which she was hired to do at the time when and the place where she was authorized to render such service. *See M & K Corp. v. Industrial Comm'n,* 112 Utah 488, 189 P.2d 132, 134 (Utah 1948).[3]

Instead, the dissent erroneously relies upon dicta from *J & W Janitorial Co.* that states that the fact that an accident occurs after work does not necessarily take it outside the course of employment. *J & W Janitorial Co.,* 661 P.2d at 950. Such reliance is misplaced for two reasons. First, the supreme court did not proceed to clarify under what circumstances an injury received after working hours would give rise to compensability, but instead went on to reverse the award of benefits in that case, holding that the employee was not within the scope of his employment. *Id.* at 950–51. Secondly, taking that proposition out of the context of that case, as the dissent does, is inappropriate because the supreme court qualified that proposition by stating that the focus is properly on whether the injury occurred as a result of the employee being engaged in activities that one could reasonably expect that an employee would do in connection with his or her duties. *Id.* at 950. Here, Walls's employer could not have reasonably expected that Walls would injure herself because she engaged in unauthorized activities five to six hours after her shift had ended.[4]

■ While the workers' compensation statute is to be broadly interpreted, such interpretations must not be "so broad that an employee's remaining on the work premises is, by itself, sufficient to justify an award." *J & W Janitorial Co.,* 661 P.2d at 950. Or, as stated by the West Virginia Supreme Court of Appeals, "While it has been said that the words, 'in the course of,' should receive liberal construction, they can not be liberalized by judicial interpretation for the purpose of allowing compensation on every claim asserted, thereby rendering such words meaningless." *Emmel v. State Compensation Director,* 150 W.Va. 277, 145 S.E.2d 29, 33 (1965) (citation omitted).

## CONCLUSION

For the foregoing reasons, we affirm the order of the Industrial Commission denying Walls workers' compensation benefits under Utah Code Ann. § 35–1–45 (1988).

ORME, J., concurs.

JACKSON, Judge, dissenting:

I respectfully dissent. By focusing on an activity that the claimant, Jacqui Walls, was engaged in prior to the activity that caused her accident, the majority opinion

---

**3.** Additionally, to adopt a rule such as that proposed by the dissent in this case would lead to incongruous results. For instance, a grounds keeper at an amusement park who, on his day off, takes his family to his place of employment and while there, stops to pick up a piece of trash from the ground, thereby injuring his back would, apparently, be entitled to compensation. On the other hand, an employee who remains at his work place for the benefit of his employer and who is injured while preparing himself a snack would presumably not be covered because at the very moment of the injury, he was not doing anything for the employer's benefit.

**4.** Furthermore, the other authorities cited by the dissent are also readily distinguishable. *Maintenance Management, Inc. v. Tinkle,* 40 Colo.App. 80, 570 P.2d 840 (1977), is cited by the dissent as an example of how the present case should be characterized. However, that case stands for the proposition that when an employer only fixes an employee's general work time, and the employer benefits from a departure from the schedule, injuries sustained in that departure are within the course of employment. *Id.* 570 P.2d at 842–43. In the present case, Walls's employer fixed a particular work schedule, not just general working hours, and the deviation was not one from the schedule, but one that took place several hours after her scheduled employment had ended. Similarly, the dissent's reliance on 1A Arthur Larson, *Workmen's Compensation Law* §§ 27.11 and 27.12 (1993) is misplaced. Those sections address the question of whether otherwise "on-duty" employees, not employees who are "off-duty" at the time of the injury, who assist co-workers are covered. Accordingly, it is improper to award Walls workers' compensation benefits on the basis of the aforementioned authorities.

ignores the possibility that a claimant who steps out of the course of her employment can return to it. The majority opinion also fails to take into account several important public policies.

In order for Walls to recover worker's compensation benefits, she must have been injured by an accident arising out of and in the course of her employment. Utah Code Ann. § 35–1–45 (1988). The words "in the course of" refer to the time, place, and circumstances under which the accident occurred. *M & K Corporation v. Industrial Comm'n*, 112 Utah 488, 189 P.2d 132, 134 (1948). The requirement that the accident arise in the course of the employment is satisfied if it occurs "within the period of employment, at a place or area where the employee may reasonably be, and while the employee is engaged in an activity at least incidental to his employment." *Black v. McDonald's of Layton*, 733 P.2d 154, 156 (Utah 1987). The *Black* court went on to state that an "activity will be considered incidental to the employee's employment if it advances, directly or indirectly, [her] employer's interests." *Id.*

It is clear from the cases cited in the majority opinion that the majority views Walls' injury causing activity as the socializing Walls was engaged in immediately after her shift ended. The majority opinion cites cases for the proposition that claimants, who are injured while socializing after work, are outside the course of their employment. If Walls was injured while merely socializing, I would readily concur in the majority opinion. The majority, however, seems to ignore the fact that Walls was no longer socializing with her friends when she was injured. Walls had crossed over to the employee's side of the bar where she worked. She was in the back room attempting to ready a keg after discovering that one had become empty. The characterization of Walls receiving an injury while socializing or engaged in personal recreation after work is incorrect and the cases cited by the majority to that effect are inapplicable.

The majority opinion cites the case of *Black v. McDonald's of Layton*, 733 P.2d

154, 156–57 (Utah 1987) (per curiam) and a four-factor test used by *Black*, as beneficial to determining whether Walls' injury stemmed from an "employment related recreational activity." The four-factor test used by the *Black* court was set forth by Professor Arthur Larson in his treatise on worker's compensation for determining whether company athletic team situations should be covered. *See Black*, 733 P.2d at 156; 1A Arthur Larson, *Workmen's Compensation Law* § 22.24 (1993). The test was applied in *Black* to determine whether the claimant, a McDonald's employee injured on his way to a McDonald's league softball game, was in the course of his employment. Neither Walls' attempt to ready the keg nor her prior socializing are activities analogous to the company team situation addressed in *Black* or the cases cited by Larson.

The case of *Martinson v. W–M Ins. Agency, Inc.*, 606 P.2d 256 (Utah 1980), cited by the majority for the proposition that the predominant motivation and purpose of the activity is determinative of whether the activity is within the course of employment, is also inapplicable. *Martinson* dealt with the special problem of how to cover claimants injured in occupations such as salespeople, where "social pleasures or diversions [can] be combined with the performance of duty, or indeed enhance it." *Martinson*, 606 P.2d at 258. The predominant motivation test is helpful in determining whether a claimant, injured while wooing a potential client over dinner, should be compensated. Walls was injured as an off-duty bartender attempting to ready a keg. There was no question whether this activity was a social pleasure. This was not a *Martinson*-type activity and the *Martinson* test does not apply.

The case of *Maintenance Management, Inc. v. Tinkle*, 40 Colo.App. 80, 570 P.2d 840 (1977) is illustrative of how the case before us should be characterized. In *Maintenance*, the claimant worked his regular 8:00 a.m. to 4:00 p.m. shift, after which he went to visit his mother. *Id.* 570 P.2d at 842. On his way home, he went back to his place of work and was injured. *Id.* His

return was neither acquiesced in nor directed by his employer. *Id.* The precise issue in the case was "whether an accident arises out of and in the course of employment when it occurs while an employee, without express authority but with the intent of acting for the benefit of the employer, has returned to his place of work after hours." *Id.* The court inferred by the claimant's statement that he wanted to "check something on the way home," that the claimant's action was intended to benefit the employer. *Id.* at 843. Accordingly, the court found that the claimant was in the course of his employment and affirmed the compensation award. *Id.* Likewise, our focus should be on the activity at the time of the injury, and not on a previous activity.[1]

The majority opinion appears to base its determination that Walls' injury was sustained during an activity outside the course of her employment on the time and circumstances under which the accident occurred. The majority opinion relies in part on the fact that Wall's shift "ended some five to six hours prior to the incident in question." The opinion cites cases from other jurisdictions for the proposition that injuries sustained after a shift is over are not within the course of employment. Our own supreme court has unequivocally stated, however, that an accident occurring after work does not necessarily mean a claimant cannot recover worker's compensation benefits. *J & W Janitorial Co. v. Industrial Comm'n,* 661 P.2d 949, 950 (Utah 1983). Although in *J & W,* the court ultimately denied the claimant compensation, the court set forth the rationale for allowing compensation to a claimant for a post-shift injury. The court stated that the real question was not whether the employee was strictly performing work duties but wheth-

er the accident happened as a result of the employee engaging in an activity that could be reasonably expected of an employee in connection with those duties. *Id.* Under this test, although Walls' injury occurred after her shift was over, it occurred while she was readying a keg that she discovered had become empty. A bartender "helping out" at the bar where she works, when she thinks it's necessary, is an activity that could be reasonably expected.

The majority opinion also relies on the fact that because no one instructed Walls to ready the keg, she was without authority to do so and was thus a mere patron at the bar. This reliance suggests that the only time a claimant can be within the course of employment is when she is specifically told to do something. The idea that workers should do no more than what they are told, even if it may benefit their employer, is bad policy and unsupported by Utah case law. The "circumstances" prong of the course of employment test is not dependent upon whether the claimant was engaged in an activity that she was specifically told or authorized to do. The circumstances prong of the test is met if the activity is "at least incidental to [her] employment," which the Utah Supreme Court determined was activity directly or indirectly benefiting the employer. *Black v. McDonald's of Layton,* 733 P.2d 154, 156 (Utah 1987); *See Maintenance,* 570 P.2d at 843 (claimant held to be in the course of his employment while injured in an activity intended to benefit employer even though activity was without express authority and occurred after hours); *See also Page v. Green,* 686 S.W.2d 528 (Mo.Ct. App.1985) ("[o]ther jurisdictions reflect a similar tendency to allow recovery if the employee was hurt during activity of bene-

1. The majority opinion states that looking at the activity engaged in by the claimant when he or she is injured would lead to incongruous results. The majority opinion gives the example of an employee, who at the request of his employer remains at his work place and is injured while preparing himself a snack. The majority opinion surmises that the claimant would not be covered because at the moment of injury, the claimant was not doing anything for the employer's benefit. If an employer requests an employee to remain at work and the employee prepares a snack there instead of going out for food, the employee is benefiting the employer by staying. In *Askren v. Industrial Comm'n,* 15 Utah 2d 275, 391 P.2d 302, 304 (Utah 1964), the supreme court held that an injury sustained in the company cafeteria, where the claimant was permitted but not required to eat was within the course of employment because it was "obvious that the cafeteria offered some advantages both to employer and employees."

fit to the employer"). It is not clear from the record whether readying a keg was one of Walls' duties or what the procedure was for readying a keg at Uncle Bart's Tavern. However, even if readying a keg was not her specific duty, the Utah Supreme Court has specifically stated that an activity "outside an employee's regular duties which is undertaken in good faith to advance the employer's interests ... is in the course of employment."[2] *State Tax Comm'n v. Industrial Comm'n*, 685 P.2d 1051, 1054 (Utah 1984).

In summary, Walls' injury occurred during the term of her employment. Injuries sustained after work are not automatically outside the course of employment if they are reasonably expected in connection with a claimant's duties. *See J & W*, 661 P.2d at 950. Walls, as a bartender noticing that a keg had become empty, could reasonably be expected to step behind the bar and attempt to help out. The back room of the bar where Walls worked was clearly a place that she may reasonably be expected to be. Walls was preparing a keg after one became empty during the business hours of the bar where she was employed. Her injury was sustained during an activity that was of direct benefit to her employer and therefor, incidental to her employment. *See Black v. McDonald's of Layton*, 733 P.2d 154, 156 (Utah 1987). Accordingly, Walls was injured during the course of her employment.

Walls was also injured from an activity "arising out of" her employment. The words "arising out of" refer to the origin or cause of the injury. *M & K Corporation v. Industrial Comm'n*, 112 Utah 488, 189 P.2d 132, 134 (1948). To meet the "arising out of" component of the test for compensation, most courts require a show-

ing "that the injury was caused by an increased risk to which claimant, as distinct from the general public, was subjected by his employment." 1 Arthur Larson, *Workmen's Compensation Law* § 6.00 (1993). A substantial number of courts have modified this requirement to "accept a showing merely that the risk, even if common to the public, was actually a risk of this employment." *Id.*[3] Utah appears to apply the "increased-risk" test. *See e.g. Fred Meyer v. Industrial Comm'n*, 800 P.2d 825, 830 (Utah App.1990) (work place increased the risk that employee would be injured); *Nyrehn v. Industrial Comm'n*, 800 P.2d 330, 336 (Utah App.1990) (legal cause satisfied because the employment increased the risk of injury to which that worker was otherwise subject to in nonemployment life).

The petitioner testified that she went into the back room of the bar where cold kegs were kept in an old refrigerator. When she opened the door, a keg slid out and crushed her foot. The risk of a beer keg falling on a bar employee's foot is certainly an increased risk that the employee would not otherwise be subject to outside of work. The fact that petitioner knew where to find the keg and presumed to go and ready it suggests that but for her employment, she would not have been subjected to the additional risk. Accordingly, the petitioner's injury arose out of her employment and she should be granted compensation under the statute.

This case presents some important policy issues that are not addressed by the majority opinion. First, when applying the governing worker's compensation statute to the facts of a particular case, the application must be made in accordance with statute's purpose. *Intermountain Smelting Corp. v. Capitano*, 610 P.2d 334, 337 (Utah

2. The A.L.J. found that Walls' motivation for staying at the bar could not be considered a good faith intention to further her employer's work. However, it cannot be said that her motivation for attempting to ready the keg was not for her employer's benefit.

3. Some courts also apply the "positional-risk" test. 1 Arthur Larson, *Workmen's Compensation Law* § 6.00 (1993). This test is primarily

used when "the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he was injured by some neutral force, meaning by 'neutral' neither personal to the claimant nor distinctly associated with the employment." 1 Arthur Larson, *Workmen's Compensation Law* § 6.50 (1993). The accident in the case before us was distinctly associated with the employment, rendering the positional-risk test inapplicable.

1980). The purpose of the statute is to alleviate the financial hardship on individual employees and those dependent upon them by spreading the cost of an injury throughout the industry that employs the worker. *Maryland Cas. Co. v. Industrial Comm'n,* 12 Utah 2d 223, 364 P.2d 1020, 1022 (Utah 1961); *Ortega v. Salt Lake Wet Wash Laundry,* 108 Utah 1, 156 P.2d 885, 888 (Utah 1945). "Compensation is therefore allowed without reference to negligence, risk inherent in the tasks, or the conduct of other workmen." *Ortega,* 108 Utah 1, 156 P.2d at 888. To further the purpose of the act, any doubt concerning the right of compensation should be resolved in favor of the injured worker. *Heaton v. Second Injury Fund,* 796 P.2d 676, 679 (Utah 1990); *J & W Janitorial Co. v. Industrial Comm'n,* 661 P.2d 949, 951 (Utah 1983); *Kaiser Steel Corp. v. Monfredi,* 631 P.2d 888, 892 (Utah 1981); *McPhie v. Industrial Comm'n,* 567 P.2d 153, 155 (Utah 1977); *Long v. Western States Refining Co.,* 14 Utah 2d 398, 384 P.2d 1015, 1016 (1963); *M & K,* 112 Utah at 490, 189 P.2d at 134 (1949). The majority opinion has not afforded Walls the benefit of any existing doubt.

Second, it is sound policy to encourage a strong esprit de corps among Utah's work force. The modern rule on helping a co-employee with his or her work "brings within the course of employment any activity undertaken in good faith by one employee to assist a coemployee in the latter's performance of his work." 1A Arthur Larson, *Workmen's Compensation Law* § 27.11 (1993) (footnote omitted). The fact that the assistance is rendered after a claimant's regular working hours is immaterial. *Id.* "The reason for this holding is simple: it would be contrary not only to human nature but to the employer's best interests to forbid employees to help each other on pain of losing compensation benefits for any injuries thereby sustained." *Id.* at § 27.12. Of course, Walls, a conscientious employee, upon noticing that a keg had become empty in the bar where she worked, would try to help out by readying a new one. The majority opinion would inhibit this behavior, not encourage it.

Lastly, another basis upon which the majority relies for holding Walls' activity outside the course of her employment was that she was without apparent authority, that is, no one with authority asked for her assistance. The third prong of the course of employment test allows for injury sustained while "the employee is carrying on the work which he is called upon to perform *or doing some act incidental thereto,*" with incidental defined as directly or indirectly beneficial to the employer. *Black v. McDonald's of Layton,* 733 P.2d 154, 156 (Utah 1987) (emphasis added). This prong is purposely disjunctive. It would be bad policy to interpret our workers compensation laws in a way that suggests the work force should do only what they are told, even if doing something they are not called upon to do would benefit the employer.

Walls was outside the course of her employment while she was shooting pool and socializing. She stepped back into the course of that employment, however, when she ceased socializing and went back across the bar to engage in an activity of benefit to her employer. She was injured during that activity and according to statutory law, case law, and prevailing public policy, she should be compensated.